# EXHIBIT A-13

# Caremark
# PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.** All liability arising from the provision of prescription drugs and services rendered by Provider will be the sole responsibility of Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8. **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

Initial

Received

JUL 2 9 2009

Confidential and Proprietary
Caremark Provider Agreement
4/01/2008

9. **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

Received

JUL 2 9 2009

Confidential and Proprietary
Caremark Provider Agreement
4/01/2008

Initial

Any changes to this agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: _AHF PhARMACY_

NCPDP#: _1046108_

NPI#: _1225264583_

By: _____
(Signature of authorized agent)

_PETER REIS- SENIOR Vice President_
(Print name of authorized agent)

Date: _July 23, 2009_

```
******ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED
```

Caremark, L.L.C.

_____
(Signature of Officer)

By:_____
(Print name of Officer)

Date_____

CaremarkPCS, L.L.C.

_____
(Signature of Officer)

_____
(Print name of Officer)

Received

JUL 2 9 2009

Confidential and Proprietary
Caremark Provider Agreement
4/01/2008

Initial

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount and Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; or (iv) Provider's U&C price less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Received

JUL 2 9 2009

Confidential and Proprietary
Caremark Provider Agreement
4/01/2008

Initial

4

# ADDENDUM TO PROVIDER AGREEMENT

The Provider Agreement is hereby amended, and the parties agree to the following as an addendum to the Provider Agreement.

1.  Under the section heading titled "Indemnification", the word "manufacturing" is deleted.

The parties hereto have caused this Addendum to Provider Agreement to be executed by their respective officers or representatives duly authorized so to do effective the same date as the effective date of the Provider Agreement. By signing below, the undersigned Provider represents and warrants to Caremark that it has read the Addendum to the Provider Agreement, and agrees to be bound by the terms of the Addendum.

Pharmacy Name: _AHF Pharmacy_

NPI#: _1225264583_

NCPDP#: _1046108_

By: _Peter Reis/Senior Vice President_
(print name of authorized agent)

_____
(signature of authorized agent)

Date: _7/28/09_

Caremark, L.L.C.

By: _____
(Print name of Officer)

_____
(Signature of Officer)

Date: _____

CaremarkPCS, L.L.C.

By: _____
(Print name of Officer)

_____
(Signature of Officer)

Date: _____

Received

JUL 2 9 2009

Confidential and Proprietary
Caremark Provider Agreement
4/01/2008

Initial

5

OL·d          323-860-5315                                                    May 22 09 01:26p

# EXHIBIT A-14

# Caremark
# PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.** All liability arising from the provision of prescription drugs and services rendered by Provider will be the sole responsibility of Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8. **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

Initial

Confidential and Proprietary
Caremark Provider Agreement
4-01-2008



DEC 1 5 2009

By

1

kwiktag ® 086 166 943

9. **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.



Confidential and Proprietary
Caremark Provider Agreement
4/01/2008

Initial

Any changes to this agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: AHF-Pharmacy

NCPDP#: 1047403

NPI#: 1801026711

By: _____
(Signature of authorized agent)

Scott Carrothers
(Print name of authorized agent)

Date: Sept 21, 2009

---

Caremark, L.L.C.

John M. Levin
VP Network Administration

(Signature of Officer)

By: _____
(Print name of Officer)

Date _____

CaremarkPCS, L.L.C.

John M. Levin
VP Network Administration

_____
(Signature of Officer)

_____
(Print name of Officer)

---

┌─────────────────────────────────────┐
│ ******ATTENTION********              │
│                                      │
│ PAGES 1, 2, AND 4 MUST BE INITIALED  │
│ BY AUTHORIZED AGENT BEFORE           │
│ CONTRACT WILL BE ACCEPTED            │
└─────────────────────────────────────┘



RECEIVED
DEC 1 5 2009
By_____

Confidential and Proprietary
Caremark Provider Agreement
4-01-2008

NCv
Initial

3

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount and Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; or (iv) Provider's U&C price less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.



DEC 1 5 2009

By_____

Confidential and Proprietary
Caremark Provider Agreement
4 01 2008

_____
Initial

4

# ADDENDUM TO PROVIDER AGREEMENT

The Provider Agreement is hereby amended, and the parties agree to the following as an addendum to the Provider Agreement.

1. Under the section heading titled "Indemnification", the word "manufacturing" is deleted.

The parties hereto have caused this Addendum to Provider Agreement to be executed by their respective officers or representatives duly authorized so to do effective the same date as the effective date of the Provider Agreement. By signing below, the undersigned Provider represents and warrants to Caremark that it has read the Addendum to the Provider Agreement, and agrees to be bound by the terms of the Addendum.

Pharmacy Name: _AHF Pharmacy_

NPI#: _1801026711_

NCPDP#: _1047403_

By: _Scott Carruthers_
(print name of authorized agent)

_(signature)_
(signature of authorized agent)

Date: _Sept 21, 2009_

Caremark, L.L.C.

By: _John M. Lavin_
(Print name of Officer)
VP Network Administration

_____
(Signature of Officer)

Date: _____

CaremarkPCS, L.L.C.

By: _John M. Lavin_
(Print name of Officer)
VP Network Administration

_____
(Signature of Officer)

Date: _____

RECEIVED
DEC 1 5 2009
By_____

Confidential and Proprietary
Caremark Provider Agreement
4 0 : 2008

_Initial_

5

# EXHIBIT A-15

# CAREMARK
*It all starts with care*
# PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark Inc, a California corporation and CaremarkPCS a Delaware Corporation (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal Laws and Regulations Section and the State Laws and Regulations Section (and attached Addendums thereto) set forth in the Provider Manual.

**kwiktag®**   012 532 317

Initial

Confidential and Proprietary
Caremark Provider Agreement
02/02/06

7. **Indemnification.** All liability arising from the provision of prescription drugs and services rendered by Provider will be the sole responsibility of Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8. **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9. **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the State Laws and Regulations Section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

Initial

Any changes to this agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: **AIDS Healthcare Foundation Pharmacy**

NCPDP#: **1099577**

By: _(Signature of authorized agent)_

**DONNA STIDHAM**
(Print name of authorized agent)

Date: **10-3-06**

---

Caremark Inc.

~~GREGORY MADSEN, SVP RETAIL SERVICES~~
(Signature of Officer)

By: _____
(Print name of Officer)

Date_____

CaremarkPCS

GREGORY MADSEN, SVP RETAIL SERVICES
(Signature of Officer)

_____
(Print name of Officer)

---

****** **ATTENTION** ********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED

Confidential and Proprietary
Caremark Provider Agreement
02/02/06

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount and Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; or (iv) Provider's U&C price less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum. If Provider has not executed and delivered to Caremark a network addendum, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Initial

Confidential and Proprietary
Caremark Provider Agreement
02/02/06



**CAREMARK**
*It all starts with care*

# ADDENDUM TO PROVIDER AGREEMENT

The Provider Agreement is hereby amended, and the parties agree to the following as an addendum to the Provider Agreement.

1.  Under the section heading titled "Indemnification", the word "manufacturing" is deleted.

The parties hereto have caused this Addendum to Provider Agreement to be executed by their respective officers or representatives duly authorized so to do effective the same date as the effective date of the Provider Agreement. By signing below, the undersigned Provider represents and warrants to Caremark that it has read the Addendum to the Provider Agreement, and agrees to be bound by the terms of the Addendum.

Pharmacy Name: AIDS Healthcare Foundation Pharmacy

NCPDP#: 1099577

By: DONNA STIDHAM
(print name of authorized agent)

Donna Stidham
(signature of authorized agent)

Date: 10-3-06

**Caremark Inc.**

By: _____
GREGORY MADSEN, SVP RETAIL SERVICES
(Print name of Officer)

(Signature of Officer)

Date: _____

**CaremarkPCS**

By: _____
GREGORY MADSEN, SVP RETAIL SERVICES
(Print name of Officer)

(Signature of Officer)

Date: _____

# EXHIBIT A-16

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS Health, L.L.C., an Arizona limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.** All liability arising from the provision of prescription drugs and services rendered by Provider will be the sole responsibility of Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

Initial

1

RECEIVED

FEB 11 2013

kwiktag ®    119 418 926

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE**

8.  **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.  **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

Initial

Confidential and Proprietary
Caremark Provider Agreement
9/15/2009 Revised 04-26-2012

RECEIVED

FEB 11 2013

2

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

Any changes to this agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: AHF Pharmacy- Lithonia

NCPDP#: 1162522

NPI#: 1902167141

By: _____
(Signature of authorized agent)

K. Scott Carruthers
(Print name of authorized agent)

Date: 2/7/13

Caremark, L.L.C.

_____
(Signature of Officer)

By: _____
John M. Lavin
SVP Provider Network Services
(Print name of Officer)

Date_____

CaremarkPCS Health, L.L.C.

John M. Lavin
SVP Provider Network Services

_____
(Signature of Officer)

_____
(Print name of Officer)

---

******ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED

---

RECEIVED

FEB 11 2013

3

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) Ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; or (iv) Provider's U&C price less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv). Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

RECEIVED

FEB 11 2013

Confidential and Proprietary
Caremark Provider Agreement
9/15/2009 Revised 04-26-2012

Initial

4

CONFIDENTIAL AND PROPRIETARY — FOIA EXEMPT —
DO NOT DISCLOSE

# ADDENDUM TO PROVIDER AGREEMENT

The Provider Agreement is hereby amended, and the parties agree to the following as an addendum to the Provider Agreement.

1. Under the section heading titled "Indemnification", the word "manufacturing" is deleted.

The parties hereto have caused this Addendum to Provider Agreement to be executed by their respective officers or representatives duly authorized so to do effective the same date as the effective date of the Provider Agreement. By signing below, the undersigned Provider represents and warrants to Caremark that it has read the Addendum to the Provider Agreement, and agrees to be bound by the terms of the Addendum.

Pharmacy Name: _AHF Pharmacy - Lithonia_

NPI#: _1902167141_

NCPDP#: _1162522_

By: _K. Scott Carruthers_
    (print name of authorized agent)

_[signature]_
(signature of authorized agent)

Date: _2/7/13_

RECEIVED
FEB 11 2013

Caremark, L.L.C.

By: _____
    _John M. Lavin_
    SVP Provider Network Services
(Print name of Officer)

_____
(Signature of Officer)

Date: _____

CaremarkPCS Health, L.L.C.

By: _____
    _John M. Lavin_
    SVP Provider Network Services
(Print name of Officer)

_____
(Signature of Officer)

Date: _____

Confidential and Proprietary
Caremark Provider Agreement
9/15/2009 Revised 04-26-2012

5

**CONFIDENTIAL AND PROPRIETARY -- FOIA EXEMPT --
DO NOT DISCLOSE**

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS Health, L.L.C., an Arizona limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1.  **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2.  **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3.  **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4.  **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5.  **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6.  **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7.  **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8.  **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages

062812--37229
AHF PHARMACY
Attn: JACQUELINE QUINTANILLA
6255 W SUNSET BLVD 21ST FL
LOS ANGELES, CA 90028-

RECEIVED

AUG 1 0 2012    Initial

Caremark Provider Agreement
1-1-2012

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT – DO NOT DISCLOSE**

of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.    **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10.   **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11.   **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12.   **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13.   **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14.   **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

**RECEIVED**

AUG 1 0 2012

_Kc_

Initial

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

Any changes to this Agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: *AHF Pharmacy*

NCPDP#: *1162522*

NPI # *1902167141*

By: _____
(Signature of authorized agent)

*K Scott Carruthers*
(Print name of authorized agent)

Date: *8/9/2012*

Caremark, L.L.C.

_____

By:_____
John M. Lavin
SVP Provider Network Services

Date_____

CaremarkPCS Health, L.L.C.

By: _____
John M. Lavin
SVP Provider Network Services

Date_____

```
******ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED
```

RECEIVED

AUG 1 0 2012

_____
Initial

Caremark Provider Agreement
1-1-2012

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT – DO NOT DISCLOSE

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

RECEIVED

AUG 1 0 2012

$\underline{\mathcal{V}}$ ↩

Initial

# EXHIBIT A-17

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider").   Caremark and Provider agree as follows:

1.   **Definitions.**  Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2.   **Credentialing.**  Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law.  Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3.   **Provider Services and Standards.**  Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law.  Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents.  Caremark may inspect all records of Provider relating to the Agreement.

4.   **Eligible Person Identification and Cost Share.**  Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person.  With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark.  Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark.  Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5.   **Network Participation and Payment.**  Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein.  Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A.  Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6.   **Compliance with Law.**  Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7.   **Indemnification.**  Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.  Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

RECEIVED

MAY 1 6 2016

Initial

8.     **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.     **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10.     **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11.     **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12.     **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13.     **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14.     **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

RECEIVED

MAY 1 6 2016

_____
Initial

By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: __AHF PHARMACY__

NCPDP#: __1168396__

NPI # __1164886727__

By: _____
(Signature of authorized agent)

__SCOTT CARRUTHERS__
(Print name of authorized agent)

Date: __05/12/2016__

Caremark, L.L.C.

_____
(Signature of authorized agent)

By:_____

Date_____

CaremarkPCS, L.L.C.

_____
(Signature of authorized agent)

By: _____

Date_____

```
******ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED
```

RECEIVED

MAY 1 6 2016   _____
                Initial

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) Provider's submitted Gross Amount Due less the applicable Patient Pay Amount.

RECEIVED

MAY 1 6 2016    _ILLc_

Initial

# EXHIBIT A-18

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider").   Caremark and Provider agree as follows:

1. **Definitions.**  Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.**  Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law.  Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.**  Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law.  Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents.  Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.**  Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person.  With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark.  Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark.  Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.**  Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein.  Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A.  Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.**  Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.**  Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.  Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

RECEIVED

MAY 1 6 2016          KLc
                       Initial

8. **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9. **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

RECEIVED

MAY 1 6 2016

_Ksc_
Initial

Caremark Provider Agreement
9-21-2015

2

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE**

By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: AHF PHARMACY

NCPDP#: 1168447

NPI # 1215381157

By: _____
(Signature of authorized agent)

SCOTT CARRUTHERS
(Print name of authorized agent)

Date: 05 | 12 | 2016

Caremark, L.L.C.

_____
(Signature of authorized agent)

By: _____

Date _____

CaremarkPCS, L.L.C.

_____
(Signature of authorized agent)

By: _____

Date _____

```
******ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED
```

RECEIVED

MAY 1 6 2016

KSc
Initial

Caremark Provider Agreement
9-21-2015

3

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) Provider's submitted Gross Amount Due less the applicable Patient Pay Amount.

RECEIVED

MAY 1 6 2016

_____
Initial

# EXHIBIT A-19

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

FEB 0 3 2017

_____
Initial

Caremark Provider Agreement
9-21-2015

1

8.  **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.  **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

FEB 0 3 2017

_____
Initial

Caremark Provider Agreement
9-21-2015

2

By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: AHF PHARMACY

NCPDP#: 1169007

NPI # 1366991283

By: _____
(Signature of authorized agent)

SCOTT CARRUTHERS
(Print name of authorized agent)

Date: 1/23/2017

Caremark, L.L.C. _____
_____
(Signature of authorized agent)

By: _____

Date _____

CaremarkPCS, L.L.C. _____
_____
(Signature of authorized agent)

By: _____

Date _____

---

**\*\*\*\*\*\*ATTENTION\*\*\*\*\*\*\*\***

PAGES **1**, **2**, AND **4** MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED

---

FEB 03 2017

_____
Initial

Caremark Provider Agreement
9-21-2015

3

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) Provider's submitted Gross Amount Due less the applicable Patient Pay Amount.

FEB 0 9 2017

Initial

# EXHIBIT A-20



# Base Agreement

CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider").   Caremark and Provider agree as follows:

1. Definitions.  Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. Credentialing.  Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law.  Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. Provider Services and Standards.  Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law.  Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents.  Caremark may inspect all records of Provider relating to the Agreement.

4. Eligible Person Identification and Cost Share.  Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person.  With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark.  Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark.  Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. Network Participation and Payment.  Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein.  Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A.  Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. Compliance with Law.  Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. Indemnification. Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8. Limitation on Liability. In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9. Term. The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. Assignment. Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. Entire Agreement. This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. Waiver. Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. Lawful Interpretation and Jurisdiction. Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. Headings. The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

SCHEDULE A
NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) Provider's submitted Gross Amount Due less the applicable Patient Pay Amount.

(X) By selecting this option, Provider, through its duly authorized representative, executes this Provider Agreement (which includes the Provider Manual) with CVS/caremark, and acknowledges receipt of the Provider Manual as available through this link.

( ) I decline to execute the Provider Agreement. If you select this option, you understand that you may not use the Pharmacy Portal to continue the enrollment process.

Signature:

AHFPiedmont/Scott Carruthers
08/29/2018 01:17:10 PM
AHF Pharmacy
1172129/1316449895
735 Piedmont Ave NE
Atlanta, GA 30308

# EXHIBIT A-21

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

RECEIVED

APR 29 2015

Initial

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

8.    **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.    **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10.   **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11.   **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12.   **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13.   **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14.   **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

RECEIVED
RECEIVED

APR 2 9 2015

_Initial_

Caremark Provider Agreement
1-1-2013

2

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE**

Any changes to this Agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: *AHF Pharmacy*

NCPDP#: *1938274*

NPI # *1275925604*

By: _____
(Signature of authorized agent)

*K-Scott Carruthers*
(Print name of authorized agent)

Date: *4/23/15*

Caremark, L.L.C.

_____
(Signature of authorized agent)

By: _____ John M. Lavin _____
        John M. Lavin
        SVP Provider Network Services

Date _____

CaremarkPCS, L.L.C.

_____
(Signature of authorized agent)

By: _____ John M. Lavin _____
        John M. Lavin
        SVP Provider Network Services

Date _____

******ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED

RECEIVED

APR 29 2015

*KG*
Initial

Caremark Provider Agreement
1-1-2013

3

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE**

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

RECEIVED

APR 2 9 2015

*Initial*

Caremark Provider Agreement
1-1-2013

# EXHIBIT A-22

 **♥CVS**Health

# Base Agreement

CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. Definitions. Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. Credentialing. Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. Provider Services and Standards. Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. Eligible Person Identification and Cost Share. Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. Network Participation and Payment. Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. Compliance with Law. Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. Indemnification.  Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.  Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8. Limitation on Liability.  In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9. Term.  The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. Assignment.  Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company.  Any permitted assignee shall assume all obligations of its assignor under this Agreement.  This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. Entire Agreement.  This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement".  Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect.  Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement.  In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. Waiver.  Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default.  No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. Lawful Interpretation and Jurisdiction.  Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law.  Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect.  Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. Headings. The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

SCHEDULE A
NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) Provider's submitted Gross Amount Due less the applicable Patient Pay Amount.

(X) By selecting this option, Provider, through its duly authorized representative, executes this Provider Agreement (which includes the Provider Manual) with CVS/caremark, and acknowledges receipt of the Provider Manual as available through this link.

( ) I decline to execute the Provider Agreement. If you select this option, you understand that you may not use the Pharmacy Portal to continue the enrollment process.

Signature:
　　　　　AHFJackson/Scott Carruthers
　　　　　10/25/2018 09:16:30 AM
　　　　　AHF Pharmacy
　　　　　2591851/1477032456
　　　　　766 Lakeland Dr Ste A
　　　　　Jackson, MS 39216

# EXHIBIT A-23

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

**REC'D NOV 1 0 2015**

_KGC_
Initial

8.  **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.  **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

REC'D NOV 1 0 2015

_____
Initial

Caremark Provider Agreement
1-1-2013

Any changes to this Agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: _AHF Pharmacy_

NCPDP#: _2993928_

NPI #: _1174908883_

By: _____
(Signature of authorized agent)

_Scott Carruthers_
(Print name of authorized agent)

Date: _10/29/15_

Caremark, L.L.C. _John M. Lavin_
John M. Lavin
SVP Provider Network Services
_____
(Signature of authorized agent)

By: _____

Date _____

CaremarkPCS, L.L.C. _John M. Lavin_
John M. Lavin
SVP Provider Network Services
_____
(Signature of authorized agent)

By: _____

Date _____

```
******ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED
```

REC'D NOV 1 0 2015

_ILSc_
Initial

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

REC'D NOV 1 0 2015

_Usc_
Initial

# EXHIBIT A-24



# Base Agreement

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark IPA, L.L.C., a New York limited liability company ("Caremark"), and the undersigned provider ("Provider") for Pharmacy Services provided by Provider to Eligible Persons enrolled with a health maintenance organization licensed under New York Public Health Law. The parties agree that the terms of this Agreement are only applicable to the extent Provider provides Pharmacy Services to Eligible Persons enrolled with a health maintenance organization licensed under New York Public Health Law. Accordingly, Caremark and Provider agree as follows:

**Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

**Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

**Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

**Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

**Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with **Schedule A** Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider. Caremark shall handle with Provider any Provider complaints regarding payment issues and concerns.

**Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

**New York State Department of Health Standard Clauses:** "The "New York State Department of Health Standard Clauses for Managed Care Provider/IPA/ACO Contracts", attached to the Agreement as **Appendix A**, are expressly incorporated into this Agreement and are binding upon the Article 44 plans and Providers that contract with such plans, and who are a party to this Agreement. In the event of any inconsistent or contrary language between the Standard Clauses and any other part of the Agreement, including but not limited to, appendices, amendments, and exhibits, the parties agree that the provisions of the Standard Clauses shall prevail, except to the extent applicable law requires otherwise and/or to the extent a provision of the Agreement exceeds the minimum requirements of the Standard Clauses.

**Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

**Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

**Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

**Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

**Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

**Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

**Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of New York without regard to choice of law provisions.

**Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

## SCHEDULE A

## NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount and Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the

applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

## Appendix A

## New York State Department of Health Standard Clauses For Managed Care Provider/IPA/ACO Contracts

(Revised April 1, 2017)

Notwithstanding any other provision of this agreement, contract, or amendment (hereinafter "the Agreement" or "this Agreement") the Article 44 plans and Providers that contract with such plans, and who are a party agree to be bound by the following clauses which are hereby made a part of the Agreement. Further, if this Agreement is between a Managed Care Organization and an IPA/ACO, or between an IPA/ACO and an IPA/ACO, such clauses must be included in IPA/ACO contracts with Providers, and Providers must agree to such clauses.

### Definitions for Purposes of this Appendix

"Managed Care Organization" or "MCO" shall mean the person, natural or corporate, or any groups of such persons, certified under Public Health Law Article 44, who enter into an arrangement, agreement or plan or any combination of arrangements or plans which provide or offer a comprehensive health services plan, or a health and long-term care services plan.

"Independent Practice Association" or "IPA" shall mean an entity formed for the limited purpose of contracting for the delivery or provision of health services by individuals, entities and facilities licensed and/or certified to practice medicine and other health professions, and, as appropriate, ancillary medical services and equipment. Under these arrangements, such health care Providers and suppliers will provide their service in accordance with and for such compensation as may be established by a contract between such entity and one or more MCOs. "IPA" may also include, for purposes of this Agreement, a pharmacy or laboratory with the legal authority to contract with other pharmacies or laboratories to arrange for or provide services to enrollees of a New York State MCO.

"Provider" shall mean physicians, dentists, nurses, pharmacists and other health care professionals, pharmacies, hospitals and other entities engaged in the delivery of Health Care Services which are licensed, registered and/or certified as required by applicable federal and state law.

### General Terms and Conditions

•This agreement is subject to the approval of the New York State Department of Health (DOH) and if implemented prior to such approval, the parties agree to incorporate into this Agreement any and all modifications required by DOH for approval or, alternatively, to terminate this Agreement if so directed by DOH, effective sixty (60) days subsequent to notice, subject to Public Health Law §4403 (6)(e). This Agreement is the sole agreement between the parties regarding the arrangement established herein.

•Any material amendment to this Agreement is subject to the prior approval of DOH, and any such amendment shall be submitted for approval in accordance with the appropriate procedures and timelines described in Sections III and VII of the New York State Department of Health Provider

Contract Guidelines for MCOs and IPA/ACOs. To the extent the MCO provides and arranges for the provision of comprehensive Health Care Services to enrollees served by the Medical Assistance Program, the MCO shall notify and/or submit a copy of such material amendment to DOH, as may be required by the Medicaid Managed Care contract between the MCO and DOH.

•Assignment of an agreement between an MCO and (1) an IPA/ACO, (2) an institutional network Provider, or (3) a medical group Provider that serves five percent (5%) or more of the enrolled population in a county, or the assignment of an agreement between an IPA/ACO and (1) an institutional Provider or (2) a medical group Provider that serves five percent (5%) or more of the enrolled population in a county, requires the prior approval of the Commissioner of Health.

•The Provider agrees, or if the Agreement is between the MCO and an IPA/ACO or between an IPA/ACO and an IPA/ACO, the IPA/ACO agrees and shall require the IPA/ACO´s Providers to agree, to comply fully and abide by the rules, policies and procedures that the MCO (a) has established or will establish to meet general or specific obligations placed on the MCO by statute, regulation, contract, or DOH or DFS guidelines or policies and (b) has provided to the Provider at least thirty (30) days in advance of implementation, including but not limited to:

•quality improvement/management;

•utilization management, including but not limited to, precertification procedures, referral process or protocols, and reporting of clinical encounter data;

•member grievances; and Provider credentialing.

•The Provider or, if the Agreement is between the MCO and an IPA/ACO, or between an IPA/ACO and an IPA/ACO, the IPA/ACO agrees, and shall require its Providers to agree, to not discriminate against an enrollee based on color, race, creed, age, gender, sexual orientation, disability, place of origin, source of payment or type of illness or condition.

•If the Provider is a primary care practitioner, the Provider agrees to provide twenty–four (24) hour coverage and back–up coverage when the Provider is unavailable. The Provider may use a twenty–four (24) hour back–up call service provided appropriate personnel receive and respond to calls in a manner consistent with the scope of their practice.

•The MCO or IPA/ACO that is a party to this Agreement agrees that nothing within this Agreement is intended to, or shall be deemed to, transfer liability for the MCO´s or IPA/ACO´s own acts or omissions, by indemnification or otherwise, to a Provider.

•Notwithstanding any other provision of this Agreement, the parties shall comply with the provisions of the Managed Care Reform Act of 1996 (Chapter 705 of the Laws of 1996) Chapter 551 of the Laws of 2006, Chapter 451 of the Laws of 2007, Chapter 237 of the Laws of 2009, Chapter 297 of the Laws of 2012, Chapter 199 of the Laws of 2014, Part H, Chapter 60, of the Laws of 2014 and Chapter 6 of the Laws of 2015 with all amendments thereto.

•To the extent the MCO enrolls individuals covered by the Medical Assistance Program, this Agreement incorporates the pertinent MCO obligations under the Medicaid Managed Care contract between the MCO and DOH as set forth fully herein, including:

•The MCO will monitor the performance of the Provider or IPA/ACO under the Agreement and will terminate the Agreement and/or impose other sanctions if the Provider's or IPA/ACO's performance does not satisfy the standards set forth in the Medicaid Managed Care contract.

•The Provider or IPA/ACO agrees that the work it performs under the Agreement will conform to the terms of the Medicaid managed care contract between the MCO and DOH and that it will take corrective action if the MCO identifies deficiencies or areas of needed improvement in the Provider's or IPA/ACO's performance.

•The Provider or IPA/ACO agrees to be bound by the confidentiality requirements set forth in the Medicaid Managed Care contract between the MCO and DOH.

•The MCO and the Provider or IPA/ACO agree that a woman's enrollment in the MCO's Medicaid Managed Care product is sufficient to provide services to her newborn, unless the newborn is excluded from the enrollment in Medicaid Managed Care or the MCO does not offer a Medicaid Managed Care product in the mother's county of fiscal responsibility.

•The MCO shall not impose obligations and duties on the Provider or IPA/ACO that are inconsistent with the Medicaid Managed Care contract or that impair any rights accorded to DOH, the local Department of Social Services, or the United States Department of Health and Human Services.

•The Provider or IPA/ACO agrees to provide medical records to the MCO for purposes of determining newborn eligibility for Supplemental Security Income where the mother is a member of the MCO and for quality purposes at no cost to the MCO.

•The Provider or IPA/ACO agrees, pursuant to 31 U.S.C. §1352 and CFR Part 93, that no federally appropriated funds have been paid or will be paid to any person by or on behalf of the Provider/IPA/ACO for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of any Member of Congress in connection with the award of any federal loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any federal contract, grant, loan, or cooperative agreement. The Provider or IPA/ACO agrees to complete and submit the "Certification Regarding Lobbying," Appendix attached hereto and incorporated herein, if this Agreement exceeds $100,000. If any funds other than federally appropriated funds have been paid or will be paid to any person for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of a member of Congress, in connection with the award of any federal contract, the making of any federal grant, the making of any federal loan, the entering of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any federal contract, grant loan, or cooperative agreement, and the Agreement exceeds $100,000 the Provider or IPA/ACO shall complete and submit Standard Form–LLL "Disclosure Form to Report Lobbying," in accordance with its instructions.

•The Provider or IPA/ACO agrees to disclose to the MCO, on an ongoing basis, any managing employee who has been convicted of a misdemeanor or felony in relation to the employee's involvement in any program under Medicare, Medicaid or a Title XX services program (block grant programs).

•The Provider or IPA/ACO agrees to monitor its employees and staff against the List of Excluded Individuals and Entities (LEIE), the Social Security Administration Death Master List, and the National

Plan Provider Enumeration System (NPPES).

•The Provider or IPA/ACO agrees to disclose to the MCO complete ownership, control, and relationship information.

•The Provider or IPA/ACO agrees to obtain for the MCO ownership information from any subcontractor with whom the Provider has had a business transaction totaling more than $25,000 during the 12–month period ending on the date of the request made by DOH, Office of the Medicaid Inspector General (OMIG) or the United States Department of Health and Human Services (DHHS). The information requested shall be provided to the MCO within thirty-five (35) days of such request.

•The Provider or IPA/ACO agrees to have an officer, director or partner of the Provider execute and deliver to DOH a certification, using a form provided by DOH through OMIG´s website, within five (5) days of executing this agreement, stating that:

•The Provider or IPA/ACO is subject to the statutes, rules, regulations, and applicable Medicaid Updates of the Medicaid program and of DOH related to the furnishing of care, services or supplies provided directly by, or under the supervision of, or ordered, referred or prescribed by the Provider. This includes 18 NYCRR 515.2 except to the extent that any reference in the regulation establishing rates, fees, and claiming instructions will refer to the rates, fees and claiming instructions set by the MCO.

•All claims submitted for payment by the Provider/IPA/ACO are for care, services or medical supplies that have been provided.

•Payment requests are submitted in accordance with applicable law.

The Provider or IPA/ACO agrees to require that an officer, director or partner of all subcontractors if they are not natural persons, or the subcontractor itself if it is a natural person, execute a certification, using a form provided by DOH through OMIG´s website, before the subcontractor requests payment under the subcontract, acknowledging that:

• The subcontractor is subject to the statutes, rules, regulations, and applicable Medicaid Updates of the Medicaid program and of DOH related to the furnishing of care, services or supplies provided directly by, or under the supervision of, or ordered, referred or prescribed by the subcontractor. This includes 18 NYCRR 515.2 except to the extent that any reference in the regulation establishing rates, fees, and claiming instructions will refer to the rates, fees and claiming instructions set by the MCO.

•All claims submitted for payment by the subcontractor are for care, services or medical supplies that have been provided.

•Payment requests are submitted in accordance with applicable law.

The parties to this Agreement agree to comply with all applicable requirements of the federal Americans with Disabilities Act.

The Provider agrees, or if the Agreement is between the MCO and an IPA/ACO or between an IPA/ACO and an IPA/ACO, the IPA/ACO agrees and shall require the IPA´s Providers to agree, to comply with all applicable requirements of the Health Insurance Portability and Accountability Act, the

HIV confidentiality requirements of Article 27–F of the Public Health Law, and Mental Hygiene Law § 33.13.

Compliance Program. The Provider agrees that if it claims, orders, or is paid $500,000 or more per year from the Medical Assistance Program, including, in the aggregate, claims submitted to or paid directly by the Medical Assistance Program and/or claims submitted to or paid by any MCO under the Medicaid Managed Care Program, that it shall adopt and implement a compliance program which meets the requirements of New York State Social Services Law § 363–d(2) and 18 NYCRR § 521.3.

Compliance Program Certification. The Provider agrees that if it is subject to the requirements of Section B (12) of this Appendix, it shall certify to DOH, using a form provided by OMIG on its website, within thirty (30) days of entering into a Provider Agreement with the MCO, if they have not so certified within the past year that a compliance program meeting the requirements of 18 NYCRR §521.3 and Social Services Law § 363–d(2) is in place. The Provider shall recertify during the month of December each year thereafter using a form provided by OMIG on OMIG's website.

**Payment and Risk Arrangements**

•Enrollee Non–liability. Provider agrees that in no event, including but not limited to, nonpayment by the MCO or IPA/ACO, insolvency of the MCO or IPA/ACO, or breach of this Agreement, shall Provider bill; charge; collect a deposit from; seek compensation, remuneration or reimbursement from; or have any recourse against a subscriber, an enrollee or person (other than the MCO or IPA/ACO) acting on his/her/their behalf, for services provided pursuant to the subscriber contract or Medicaid Managed Care contract and this Agreement, for the period covered by the paid enrollee premium. In addition, in the case of Medicaid Managed Care, Provider agrees that, during the time an enrollee is enrolled in the MCO, Provider will not bill DOH or the City of New York for covered services within the Medicaid Managed Care benefit package as set forth in the Agreement between the MCO and DOH. This provision shall not prohibit the Provider, unless the MCO is a Managed Long-Term Care plan designated as a Program of All–Inclusive Care for the Elderly (PACE), from collecting copayments, coinsurance amounts, or permitted deductibles, as specifically provided in the evidence of coverage, or fees for uncovered services delivered on a fee–for–service basis to a covered person, provided that Provider shall have advised the enrollee in writing that the service is uncovered and of the enrollee's liability therefore prior to providing the service. Where the Provider has not been given a list of services covered by the MCO, and/or Provider is uncertain as to whether a service is covered, the Provider shall make reasonable efforts to contact the MCO and obtain a coverage determination prior to advising an enrollee as to coverage and liability for payment and prior to providing the service. This provision shall survive termination of this Agreement for any reason and shall supersede any oral or written agreement now existing or hereafter entered into between Provider and enrollee or person acting on his or her behalf.

•Coordination of Benefits (COB). To the extent otherwise permitted in this Agreement, the Provider may participate in collection of COB on behalf of the MCO, with COB collectibles accruing to the MCO or to the Provider. However, with respect to enrollees eligible for medical assistance or participating in Child Health Plus, the Provider shall maintain and make available to the MCO records reflecting COB proceeds collected by the Provider or paid directly to enrollees by third-party payers, and amounts thereof, and the MCO shall maintain or have immediate access to records concerning collection of COB proceeds.

•If the Provider is a health care professional licensed, registered or certified under Title 8 of the

Education Law, the MCO or the IPA/ACO must provide notice to the Provider at least ninety (90) days prior to the effective date of any adverse reimbursement arrangement as required by Public Health Law §4406–c(5–c). Adverse reimbursement change shall mean a proposed change that could reasonably be expected to have a material adverse impact on the aggregate level of payment to a health care professional. This provision does not apply if the reimbursement change is required by law, regulation or applicable regulatory authority; is required as a result of changes in fee schedules, reimbursement methodology or payment policies established by the American Medical Association current procedural terminology (CPT) codes, reporting guidelines and conventions; or such change is expressly provided for under the terms of this Agreement by the inclusion or reference to a specific fee or fee schedule, reimbursement methodology, or payment policy indexing scheme.

•The parties agree to comply with and incorporate the requirements of Physician Incentive Plan (PIP) Regulations contained in 42 CFR §438.6(h), 42 CFR §422.208, and 42 CFR §422.210 into any contracts between the contracting entity (Provider, IPA/ACO, hospital, etc.) and other persons/entities for the provision of services under this Agreement. No specific payment will be made directly or indirectly under the plan to a physician or physician group as an inducement to reduce or limit medically necessary services furnished to an enrollee.

•The parties agree that, where required by Public Health Law §4903, a claim for certain continued, extended, or additional health care services cannot be denied on the basis of medical necessity or a lack of prior authorization while a utilization review determination is pending if all necessary information was provided within the required timeframes and under the circumstances described in Public Health Law §4903.

•The parties agree to follow Section 3224–a of the Insurance Law providing timeframes for the submission and payment of Provider claims to the MCO.

•The parties agree to follow Section 3224–b(a) of the Insurance Law requiring an MCO to accept and initiate the processing of all claims submitted by physicians that conform to the American Medical Association´s Current Procedural Technology (CPT) codes, reporting guidelines and conventions, or to the Centers for Medicare and Medicaid Services´ Healthcare Common Procedure Coding System (HCPCS).

The parties agree to follow Section 3224–b(b) of the Insurance Law prohibiting an MCO from initiating overpayment recovery efforts more than twenty-four (24) months after the original payment was received by a health care Provider, except where: (1) the plan makes overpayment recovery efforts that are based on a reasonable belief of fraud or other intentional misconduct or abusive billing; (2) for the Medicaid Managed Care and Family Health Plus programs, the overpayment recovery period for such programs is six (6) years from date payment was received by the health care Provider with written notice thirty (30) days prior to engaging in overpayment recovery efforts. Such notice must state the patient´s name, service date, payment amount, proposed adjustment, and a reasonably specific explanation of the proposed adjustment.

The parties agree to follow Section 3224–c of the Insurance Law providing that claims cannot be denied solely on the basis that the MCO has not received from the member information concerning other insurance coverage.

The parties agree that this contract does not waive, limit, disclaim, or in any way diminish the rights that any Provider may have pursuant to Section 3238 of the Insurance Law to the receipt of claims

payment for services where preauthorization was required and received from the appropriate person or entity prior to the rendering of the service.

The parties agree that for a contract involving Tier 2 or 3 arrangements as described in Section VII.B of the Guidelines, the contract must:

Provide for the MCO's ongoing monitoring of Provider financial capacity and/or periodic Provider financial reporting to the MCO to support the transfer of risk to the Provider; and

•Include a provision to address circumstance where the Provider's financial condition indicates an inability to continue accepting such risk; and

•Address MCO monitoring of the financial security deposit, describing the method and frequency of monitoring and recourse for correcting underfunding of the deposit to be maintained by the MCO; and

•Include a provision that the Provider will submit any additional documents or information related to its financial condition to the MCO, if requested by DOH.

The parties agree that for any contract involving an MCO and IPA/ACO, the contract must include provisions whereby:

•The parties expressly agree to amend or terminate the contract at the direction of DOH (applies to Tier 1, Tier 2, and Tier 3);

•The IPA/ACO will submit annual financial statements to the MCO, as well as any additional documents required by the MCO as necessary to assess the IPA/ACO's progress towards achieving value based payment goals as specified in the Roadmap, and the MCO will notify DOH of any substantial change in the financial condition of the IPA/ACO (applies to Tier 2 and Tier 3); and

•The IPA/ACO will submit any additional documents or information related to its financial condition to the MCO, if requested by DOH (applies to Tier 2 and Tier 3); and

•The parties agree that all Provider contracts will contain provision prohibiting Providers, in the event of a default by the IPA/ACO, from demanding payment from the MCO for any covered services rendered to the MCO's enrollees for which payment was made by the MCO to the IPA/ACO pursuant to the risk agreement (applies to Tier 2 and Tier 3).

## Records and Access

•Pursuant to appropriate consent/authorization by the enrollee, the Provider will make the enrollee's medical records and other personally identifiable information (including encounter data for government–sponsored programs) available to the MCO (and IPA/ACO if applicable) for purposes including preauthorization, concurrent review, quality assurance, (including Quality Assurance Reporting Requirements (QARR)), payment processing, and qualification for government programs, including but not limited to, newborn eligibility for Supplemental Security Income (SSI) and for MCO/Manager analysis and recovery of overpayments due to fraud and abuse. The Provider will also make enrollee's medical records available to the State for management audits, financial audits, program monitoring and evaluation, licensure or certification of facilities or individuals, and as otherwise required by state law. The Provider shall provide copies of such records to DOH at no cost.

The Provider (or IPA/ACO if applicable) expressly acknowledges that the Provider shall also provide to the MCO and the State (at no expense to the State), on request, all financial data and reports, and information concerning the appropriateness and quality of services provided, as required by law. These provisions shall survive termination of the contract for any reason.

•When such records pertain to Medicaid reimbursable services, the Provider agrees to disclose the nature and extent of services provided and to furnish records to DOH and/or the United States Department of Health and Human Services, the County Department of Social Services, the Comptroller of the State of New York, the Office of the Medicaid Inspector General, the New York State Attorney General, and the Comptroller General of the United States and their authorized representatives upon request. This provision shall survive the termination of this Agreement regardless of the reason.

•The parties agree that medical records shall be retained for a period of six (6) years after the date of service, and in the case of a minor, for three (3) years after majority or six (6) years after the date of service, whichever is later, or for such longer period as specified elsewhere within this Agreement. This provision shall survive the termination of this Agreement regardless of the reason.

•The MCO and the Provider agree that the MCO will obtain consent directly from enrollees at the time of enrollment or at the earliest opportunity, or that the Provider will obtain consent from enrollees at the time of service is rendered or at the earliest opportunity, for disclosure of medical records to the MCO, to an IPA/ACO or to third parties. If the Agreement is between an MCO and an IPA/ACO, or between an IPA/ACO and an IPA/ACO, the IPA/ACO agrees to require the Providers with which it contracts to agree as provided above. If the Agreement is between an IPA/ACO and a Provider, the Provider agrees to obtain consent from the enrollee if the enrollee has not previously signed consent for disclosure of medical records.

**Termination and Transition**

•Termination or non–renewal of an agreement between an MCO and an IPA/ACO, institutional network Provider, or medical group Provider that serves five percent (5%) or more of the enrolled population in a county, or the termination or non–renewal of an agreement between an IPA/ACO and an institutional Provider or medical group Provider that serves five percent (5%) or more of the enrolled population in a county, requires notice to the Commissioner of Health. Unless otherwise provided by statute or regulation, the effective date of termination shall not be less than forty-five (45) days after receipt of notice by either party, provided, however, that termination by the MCO may be effected on less than forty-five (45) days' notice provided the MCO demonstrates to the satisfaction of DOH, prior to termination, that circumstances exist which threaten imminent harm to enrollees or which result in Provider being legally unable to deliver the covered services and, therefore, justify or require immediate termination.

•If this Agreement is between the MCO and a health care professional, the MCO shall provide to such health care professional a written explanation of the reasons for the proposed contract termination, other than non–renewal, and an opportunity for a review as required by state law. The MCO shall provide the health care professional sixty (60) days' notice of its decision to not renew this Agreement.

•If this Agreement is between an MCO and an IPA/ACO, and the Agreement does not provide for automatic assignment of the IPA/ACO's Provider contracts to the MCO upon termination of the

MCO/IPA/ACO contract, in the event either party gives notice of termination of the Agreement, the parties agree, and the IPA/ACO's Providers agree, that the IPA/ACO Providers shall continue to provide care to the MCO's enrollees pursuant to the terms of this Agreement for 180 days following the effective date of termination, or until such time as the MCO makes other arrangements, whichever occurs first. This provision shall survive termination of this Agreement regardless of the reason for the termination.

•Continuation of Treatment. The Provider agrees that in the event of MCO or IPA/ACO insolvency or termination of this contract for any reason, the Provider shall continue, until medically appropriate discharge or transfer, or completion of a course of treatment, whichever occurs first, to provide services pursuant to the subscriber contract or Medicaid Managed Care contract, to an enrollee confined in an inpatient facility, provided the confinement or course of treatment was commenced during the paid premium period.

**For purposes of this clause, the term "Provider" shall include the IPA/ACO and the IPA/ACO's contracted Providers if this Agreement is between the MCO and an IPA/ACO.**

This provision shall survive termination of this Agreement.

•Notwithstanding any other provision herein, to the extent that the Provider is providing Health Care Services to enrollees under the Medicaid Program, the MCO or IPA/ACO retains the option to immediately terminate the Agreement when the Provider has been terminated or suspended from the Medicaid Program.

•In the event of termination of this Agreement, the Provider agrees, and, where applicable, the IPA/ACO agrees to require all participating Providers of its network to assist in the orderly transfer of enrollees to another Provider.

## Arbitration

•To the extent that arbitration or alternative dispute resolution is authorized elsewhere in this Agreement, the parties to this Agreement acknowledge that the Commissioner of Health is not bound by arbitration or mediation decisions. Arbitration or mediation shall occur within New York State, and the Commissioner of Health will be given notice of all issues going to arbitration or mediation and copies of all decisions.

## IPA/ACO–Specific Provisions

•Any reference to IPA/ACO Quality Assurance (QA) activities within this Agreement is limited to the IPA/ACO's analysis of utilization patterns and quality of care on its own behalf and as a service to its contractual Providers.

## Appendix A-1

## CERTIFICATION REGARDING LOBBYING

The undersigned certifies, to the best of his or her knowledge, that:

•No Federal appropriated funds have been paid or will be paid to any person by or on behalf of the

Provider for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of a Member of Congress in connection with the award of any Federal loan, the entering into any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

•If any funds other than Federal appropriated funds have been paid or will be paid to any person for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress in connection with the award of this Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into any cooperative agreement, or the extension, continuation, renewal, amendment or modification of any Federal contract, grant, loan, or cooperative agreement, and the Agreement exceeds $100,000, the Provider shall complete and submit Standard Form-LLL "Disclosure Form to Reporting Lobby," in accordance with its instructions.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction pursuant to U.S.C. Section 1352. The failure to file the required certification shall subject the violator to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

(X) By selecting this option, Provider, through its duly authorized representative, executes this Provider Agreement (which includes the Provider Manual) with CVS/caremark, and acknowledges receipt of the Provider Manual as available through this link.

( ) I decline to execute the Provider Agreement. If you select this option, you understand that you may not use the Pharmacy Portal to continue the enrollment process.

Signature:
      ahfcityviewrx/Scott Carruthers
      04/05/2018 11:41:59 AM
      AIDS Healthcare Foundation
      3349859/1679544563
      2307 Astoria Blvd
      Astoria, NY 11102

# EXHIBIT A-25

Effective

JUN 18 2013

## AGENCY ADDENDUM TO
## Caremark PROVIDER AGREEMENT

This agency addendum to the Caremark Provider Agreement (the "Addendum") is entered into between Caremark and the undersigned provider ("Provider") and shall become effective, and binding on the Provider as of _____ 10/21 _____, 2012 (the "Effective Date").

# RECITALS:

A. Caremark and Provider have previously entered in that certain Caremark Provider Agreement (the "Provider Agreement"). Capitalized terms not defined herein shall have the meanings used in the Provider Agreement.

B. Caremark and the administrator identified on the signature page of this Addendum ("Administrator") have entered into an administrator agreement (the "Administrator Agreement") whereby Administrator, pursuant to various agency addenda, has been designated an attorney-in-fact for certain providers to perform certain functions under the Provider Agreement on providers' behalf as set forth in the Administrator Agreement and the agency addenda. A copy of the Administrator Agreement is attached as Exhibit "A."

C. ....... Caremark and Provider wish to amend the Provider Agreement so as to designate Administrator as its attorney-in-fact to perform certain functions under the Provider Agreement on Provider's behalf as set forth in the Administrator Agreement and this Addendum.

Now, therefore, Caremark and Provider agree as follows:

1. **Appointment of Attorney-in-Fact.** Provider hereby appoints and designates Administrator as its attorney-in-fact to perform those functions set forth in the Administrator Agreement including, without limitation, (i) enrolling and disenrolling Provider in one or more Caremark Networks, (ii) receiving certain notices, documents, information and materials required by or related to the Caremark Provider Agreement, including, without limitation, any amendments contemplated by the Caremark Agreement (collectively, the "Caremark Information") and (iii) entering into amendments to the Provider Agreement on Provider's behalf. Provider acknowledges that, while this Addendum is in effect, (i) Administrator shall have the sole authority to enroll or disenroll Provider in a Caremark Network and (ii) Provider's enrollment or nonenrollment in a Caremark Networks is subject to the terms of the Administrator Agreement.

(a) **Central Payment.** Provider hereby appoints Administrator as its agent to receive all payments that Caremark may make from time to time for the Pharmacy Services performed by Provider pursuant to the Provider Agreement ("Central Payment"). The Central Payment is an aggregate payment representing amounts payable to all providers, including the undersigned Provider, who are participating in a Central Payment arrangement with Administrator. Caremark may offset against all or any portion of a Central Payment amounts owed by a provider other than the undersigned Provider, including without limitation, amounts owed as a result of audit recoveries, claims reversals or adjustments, or fees. Provider acknowledges that reconciliation of amounts paid under a Central Payment will be the sole responsibility of Administrator as Provider's agent.

2. **Delivery of Caremark Information to Administrator.** Provider acknowledges that Caremark may deliver any and all Caremark Information directly to Administrator on Provider's behalf. To the extent applicable to certain Caremark Information, Caremark shall deliver such Caremark Information to Administrator in the manner and within the time frame required by the Provider

This document contains proprietary information of Caremark and may not be used for any purpose other than to enable a trading into a relationship with Caremark, nor may it be duplicated or disclosed to others for any purpose. Caremark may change this document from time to time as described.

RECEIVED

FEB 25 2013



kwiktag ®  156 524 177

Effective

JUN 1 8 2013

Agreement. Provider hereby waives the requirements in the Provider Agreement that Caremark shall deliver such Caremark information to Provider in the manner and within the time frame required by the Provider Agreement. Provider acknowledges that, in accordance with the Administrator Agreement, Administrator has undertaken to promptly furnish to Provider all Caremark information furnished to Administrator by Caremark for distribution to Provider. Nothing in this Section 2 shall limit Caremark's right communicate with, or provide the Caremark information directly to, Provider.

3. **Termination of Appointment of Attorney-in-Fact.** Commencing with the Effective Date, the above appointment and designation shall remain in effect until fifteen (15) days after Provider notifies Administrator of Provider's wish to terminate this Addendum. All notices to Administrator pursuant to the Agency Addendum must be in writing, and be delivered in person, or by certified mail, air courier, or first class mail, and addressed to the Administrator at the address indicated on the Administrator Agreement attached as Exhibit "A". All notices will be deemed received when delivered in person. If sent by mail, the notice will be deemed received on the third business day after the date such notice was mailed. Caremark shall not accept notice to terminate this Addendum from Provider and will only accept notice of termination from the Administrator. Additionally, at the time Provider notifies Administrator of Provider's wish to terminate this Addendum, Administrator shall notify Caremark pursuant to the notice procedures set forth in the Administrator Agreement.

4. **Disclosure of Information.** While this Addendum is in effect, Provider authorizes both Caremark and Administrator to make available any and all information regarding Provider to Caremark or Administrator, as the case may be, to the extent necessary for Caremark or Administrator to perform its obligations under the Administrator Agreement.

5. **Fees Charged to Participating Provider.** Caremark shall assess Provider a charge of thirty-five dollars ($35.00) to enroll in Administrator's program. Enrollment fees shall be offset against the Central Payment.

6. **Indemnification.** Provider agrees to indemnify and hold Caremark, its shareholders, directors, employees, agents and representatives free and harmless for, from and against any and all liabilities, losses, settlements, claims, demands, and expenses of any kind (including attorneys' fees and costs), that may result or arise out of any breach of, any negligence or misconduct of Administrator in the performance of, or omission of, any act or responsibility assumed by Administrator under the Administrator Agreement.

7. **Other Provider Agreement Provisions.** Except as expressly amended by this Addendum, all other provisions of the Provider Agreement shall continue in full force and effect.

8. **Entire Agreement.** This Addendum, its schedules and exhibits, contain the entire agreement between Provider and Caremark with respect to the subject matter contained in this Addendum.

[This space left intentionally blank]

This document contains proprietary information of Caremark and may not be used for any purpose other than to evaluate a relationship with Caremark, nor may it be duplicated or disclosed to others for any purpose. Caremark may change this document from time to time at its discretion.

RECEIVED

FEB 2 5 2013

IN WITNESS WHEREOF, the parties have caused this Addendum to be executed by their respective officers or representatives duly authorized to do effective as of the date set forth above.

Provider Info: (Please Print)

Date: 2/25/13

Provider Name: AIDS Healthcare Foundation

NPI #: 1013253805

NCPDP #: 3680762

Address: 1198 North High St.

Columbus, Ohio 43201

Phone: 3680762

Fax: (614) 754-1246

State Medicaid #: 3073758

DEA #: FW3566328

State License #: RTP.022243650

Federal Tax ID #: 954112121

Printed Name: K. Scott Carruthers

Title: Senior Manager, Medical Director of Pharmacy

Signature: _[signature]_

Caremark, L.L.C. _John M. Lavin_
(Signature of Officer)
SVP Provider Network Services

By: _____
(Print name of Officer)

Date: _____

Caremark PCS, L.L.C. _John M. Lavin_
(Signature of Officer)
SVP Provider Network Services

(Print name of Officer)

Effective

JUN 1 8 2013

ADMINISTRATOR HEREBY AGREES AND CONSENTS TO THE ABOVE APPOINTMENT AND DESIGNATION.

Administrator

Date: _____

Administrator Name: A603/0A603 - LEADER DRUG STORE INC

By: _Marci Delrosso_ Vice President, Marketing - Product Management
Printed Name and Title:

Signature: _[signature]_

Central Pay Agency/Addendum *                          Page 5                          00/00/0000

This document contains proprietary information of Caremark and may not be used for any purpose other than to evaluate existing or a relationship with Caremark, nor may it be duplicated or disclosed to others for any purpose. Caremark may change this document from time to time at its discretion.

RECEIVED

FEB 2 5 2013

Exhibit "A"

[attach copy of Administrator Agreement]

Effective.

JUN 1 8 2013

Carrier/Agency Addendum                    Page 4                    06/07/2008

This document contains proprietary information of Coventry and may not be used for any purpose other than to enter into a business relationship with Coventry, nor may it be duplicated or disclosed to others for any purpose. Coventry may change this document from time to time at its discretion.

RECEIVED

FEB 2 5 2013

# EXHIBIT A-26

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

**RECEIVED** _ve_

**JUL 0 7 2014**      Initial

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

8.    **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.    **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10.   **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11.   **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12.   **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13.   **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14.   **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

RECEIVED

JUL 0 7 2014

*ℓ℘*
_____
Initial

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE**

Any changes to this Agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: _AHF Pharmacy_

NCPDP#: _368 1930_

NPI#: _1273945826_

By: _____
(Signature of authorized agent)

_Scott Carruthers_
(Print name of authorized agent)

Date: _6/27/16_

Caremark, L.L.C.

_____
(Signature of authorized agent)

By: _____
John M. Lavin
SVP Provider Network Services

Date _____

CaremarkPCS, L.L.C.

_____
(Signature of authorized agent)

By: _____
John M. Lavin
SVP Provider Network Services

Date _____

******ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED

## RECEIVED

AUG 0 1 2014

_____
Initial

Caremark Provider Agreement
1-1-2013

3

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

RECEIVED

JUL 07 2014

Initial

Caremark Provider Agreement
1 1 2013

4

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms attached hereto as Appendix A.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in Appendix B attached hereto.

7. **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

RECEIVED

JUL 0 7 2014

Initial

8.   **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.   **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10.  **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11.  **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12.  **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13.  **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14.  **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

RECEIVED

JUL 0 7 2014

*VC*

Initial

Any changes to this agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: *AHF Pharmacy*

NCPDP#: 368/930

NPI # 275945826

By: _____
(Signature of authorized agent)

*Scott Carruthers*
(Print name of authorized agent)

Date: 6/27/14

Caremark, L.L.C.

_____
(Signature of Officer)

By: _____
          John M. Lavin
          SVP Provider Network Services
(Print name of Officer)

Date _____

CaremarkPCS, L.L.C.

_____
(Signature of Officer)

By: _____
          John M. Lavin
          SVP Provider Network Services
(Print name of Officer)

Date _____

---

****** **ATTENTION** ********

ALL PAGES MUST BE INITIALED BY
AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED

---

**RECEIVED**

AUG 0 1 2014

_Initial_

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (i) Provider participates in as of the date of this Agreement; (ii) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (iii) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (iv) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; or (iv) Provider's U&C price less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

RECEIVED

**JUL 0 7 2014**

Initial

Caremark Washington Provider Agreement
10-21-2010

4

# APPENDIX A

# GLOSSARY OF TERMS

**AWP or Average Wholesale Price** means the current wholesale cost of a given drug as defined in the latest edition of the First DataBank Blue Book, Medi-Span (with supplements), MICROMEDEX, or any other similar nationally recognized reference which Caremark may reasonably select from time to time.

**Confidential Caremark Information** means any nonpublic information or data (including but not limited to products, programs, services, business practices, procedures, MAC lists, reimbursement pricing information, prices paid to Provider for individual claims, or other information acquired from the contents of the Provider Agreement) obtained from or provided by Caremark or any Plan Sponsor to Provider through or in connection with the Provider Agreement that is confidential and proprietary to Caremark.

**Covered Item** means any drug or device covered, in whole or in part, in accordance with and subject to the terms of a Plan covering an Eligible Person.

**Dispensing Pharmacy** means the pharmacy identified by the NCPDP/NPI number under which the claim was submitted to and adjudicated by Caremark and where the Pharmacy Services were provided to the Eligible Person.

**Eligible Person** means a person or animal entitled to a Covered Item pursuant to a Plan.

**Law** means any Federal, State, local or other constitution, charter, act, statute, Law, ordinance, code, rule, regulation, order, specified standards, or objective criteria contained in or which are (by express reference or necessary implication) a condition of granting any applicable permit, license or approval required by Caremark, Provider, or a Plan Sponsor, or other legislative or administrative action of the United States of America, or state or any agency, department, authority, political subdivision or other instrumentality thereof or a decree or judgment or order of a court.

**MAC or Maximum Allowable Cost** means a unit price that has been established as the reimbursement amount to Provider for certain multiple-source drugs without regard to the specific manufacturer whose drug is dispensed.

**Patient Pay Amount** means the amount an Eligible Person must pay to Provider at the time a Covered Item is dispensed as indicated by the claims system, which may include but is not limited to copayments, coinsurance, deductibles, transaction fees, access fees, and/or taxes.

**Pharmacy Services/Provider Services** means all services including the provision of prescription drugs usually and customarily rendered by a Provider licensed to provide pharmacy services in the normal course of business, including services mandated by applicable Law. Pharmacy Services may include, but not be limited to: the maintenance of Eligible Person profiles; the interpretation of prescriptions; the selection of medications and medical devices; the sale of compounding or dispensing of medications and medical devices (also includes over-the-counter medications [OTCs] and supplies covered by or used in conjunction with a pharmacy benefit); the counseling of Eligible Persons, which may consist of information about the proper storage, dosing, side effects, potential interactions and use of the medication dispensed; the monitoring of appropriate drug use; and the implementation of drug utilization review programs and other clinical programs and services.

**Plan** means that portion of Plan Sponsor's pharmacy benefit plan that relates to Covered Items with respect to a group of Eligible Persons.

**Plan Sponsor** means the entity that contracts with Caremark or any of Caremark Rx, L.L.C.'s affiliates for pharmacy benefit management services, which entity could be, among other things, an insurance company, self-insured group, health maintenance organization, preferred provider organization, multi-employer trust or third party administrator.

RECEIVED

JUL 0 7 2014

Initial

Caremark Washington Provider Agreement
10-21-2010

5

**Prescriber** means a physician, dentist, physician's assistant, optometrist or other health care professional authorized by law to write prescriptions for prescription drugs.

**Price Type** means a current price of a given drug as defined by a nationally recognized reference that Caremark may reasonably select from time to time, which may include, but is not limited to: AWP (Average Wholesale Price), WAC (Wholesale Acquisition Cost), AMP (Average Manufacturer Price), ASP (Average Sales Price) or DP (Direct Price).

**Third-Party Agreement** means an agreement between Caremark and a Caremark client in which Caremark serves as an auditor for that client's participating network pharmacies.

**Usual and Customary Price or U&C** means the lowest price Provider would charge to a particular customer if such customer were paying cash for an identical prescription on that particular day at that particular location. This price must include any applicable discounts offered to attract customers.

RECEIVED

JUL 0 7 2014

Initial

# APPENDIX B

# WASHINGTON-SPECIFIC REQUIREMENTS

In the event any provision in this Agreement conflicts with the terms of this Appendix B, the terms of this Appendix B shall govern. To the extent that Provider provides Pharmacy Services to Eligible Persons enrolled with a health maintenance organization , insurer, carrier, or health care services contractor licensed and regulated under Washington law (collectively and/or individually, "Regulated Entity"),   Provider agrees to comply with all requirements for participation as a provider in Washington and all applicable laws relating thereto. Without limiting the generality of the foregoing, and notwithstanding anything in the Provider Agreement to the contrary, Provider agrees as follows:

### Section 3          Provider Services and Standards

Section 3 <u>Provider Services and Standards</u> of the Provider Agreement shall be deleted and replaced with the following:

(a) Provider agrees to provide Pharmacy Services in accordance with the terms of this Agreement. Provider further agrees to comply with and follow the requirements set forth in the Provider Manual received by Provider from Caremark. Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the Prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all claims for such Pharmacy Services electronically to Caremark in accordance with the written directions provided by Caremark.

(b) Caremark agrees to provide reasonable notice of not less than sixty (60) days of changes to the Agreement and/or Provider Manual that affect Provider's reimbursement and that affect health care service delivery unless changes to federal or state law or regulations make such advance notice impossible, in which case notice shall be provided as soon as possible. Provider may terminate this Agreement without cause pursuant to Section 15(b) of the Agreement if Provider does not agree with the said changes. .

(c) Provider shall furnish services to Eligible Persons without regard to an Eligible Person's enrollment in a Plan as a private purchaser of the Plan or as a participant in publicly financed programs of health care services.

(d) Caremark may inspect all records of Provider relating to the Agreement.

(e) Caremark shall, promptly upon execution of this Agreement, notify Provider of its responsibilities with respect to applicable administrative policies and programs, including, but not limited to, payment terms, utilization review, quality assessment and improvement programs, credentialing, grievance procedures, data reporting requirements, confidentiality requirements and any applicable federal or state requirements, in each case, to the extent not provided in this Agreement.

(f) Provider agrees to make available its books, records (including health records) to appropriate state and federal governmental authorities involved in assessing the quality of care or investigating the grievances or complaints of Eligible Persons, subject to applicable state and federal Laws related to the confidentiality of medical or health records.

[Wash. Rev. Code § 48.43.505; Wash. Admin. Code § 284-43-320(4), (6) & (8)].

### Section 4          Eligible Person Identification and Cost Share

Section 4 <u>Eligible Person Identification and Cost Share</u> of the Provider Agreement, shall be deleted and replaced with the following:

RECEIVED

JUL 0 7 2014              _Ver_____
                          Initial

(a) Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. The Provider Manual shall contain information for Provider to obtain timely information on the eligibility of Eligible Persons, including any limitations or conditions on services or benefits under the Plans. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark.

(b) Notwithstanding any provision of the Provider Agreement to the contrary, including the definition of "Patient Pay Amount" in Appendix A, Provider agrees that in no event, including, but not limited to nonpayment by Caremark or Regulated Entity, Caremark's or Regulated Entity's insolvency, or breach of the Provider Agreement shall Provider bill, charge, collect a deposit from, seek compensation, remuneration, or reimbursement from, or have any recourse against an Eligible Person or person acting on their behalf, other than Caremark or Regulated Entity, for services provided pursuant to the Provider Agreement. This provision shall not prohibit collection of deductibles, copayments, coinsurance, and/or noncovered services, which have not otherwise been paid by a primary or secondary carrier in accordance with regulatory standards for coordination of benefits from Eligible Persons in accordance with the terms of the Eligible Person's Plan. Wash. Admin. Code § 284-43-320(2); Wash. Rev. Code §§ 48.44.020(4)(a), (b); 48.46.243(1),(4).

(c) A Provider's willful collection or attempt to collect an amount from an Eligible Person, knowing that collection to be in violation of the Provider Agreement constitutes a class C felony under Wash. Rev. Code § 48.80.030(5). Wash. Admin. Code § 284-43-320(3).

(d) Provider agrees, in the event of Caremark's or Regulated Entity's insolvency, to continue to provide the services promised in the Provider Agreement to Eligible Persons for the duration of the period for which premiums on behalf of the Eligible Person were paid to Regulated Entity or until the Eligible Person's discharge from an inpatient facility, whichever time is greater. Wash. Admin. Code § 284-43-320(2)(b).

(e) Notwithstanding any other provision of the Provider Agreement to the contrary, nothing in this Agreement shall be construed to modify the rights and benefits contained in an Eligible Person's Plan. In the event of any conflict between the Provider Agreement and an Eligible Person's Plan, the benefits, terms, and conditions of the Plan shall govern with respect to coverage provided to Eligible Persons. Wash. Admin. Code § 284-43-320(1), (2)(e).

(f) Provider may not bill an Eligible Person for Covered Item (except for deductibles, copayments, or coinsurance) where Caremark or Regulated Entity deny payments because Provider has failed to comply with the terms or conditions of the Provider Agreement. Wash. Admin. Code § 284-43-320(2)(d).

(g) Provider further agrees that the provisions of paragraphs (b), (d)-(f) of this Section 4 shall survive termination of the Provider Agreement regardless of the cause giving rise to termination and shall be construed to be for the benefit of the Eligible Person. Provider further agrees that this provision supersedes any oral or written contrary agreement now existing or hereafter entered into between Provider and Eligible Persons or persons acting on their behalf. Wash. Admin. Code § 284-43-320(2)(e); Wash. Rev. Code §§ 48.44.020(4)(a); 48.46.243(1).

(h) If Provider contracts with other providers or facilities who agree to provide covered services to Eligible Persons with the expectation of receiving payment directly or indirectly from Caremark or Regulated Entity, such providers or facilities must agree to abide by the provisions of paragraphs (b), (d)-(g) of this Section 4. Wash. Admin. Code § 284-43-320(2)(f).

## Section 5          Network Participation and Payment

Section 5 **Network Participation and Payment** of the Provider Agreement, shall be deleted and replaced with the following:

(a) Provider agrees to participate in the networks referenced on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with

RECEIVED                                               Initial

**JUL 0 7 2014**

Schedule A as applicable.

(b) Caremark and Provider agree to satisfy and comply with the provider contract and payment requirements set forth under Chapter 284-43, Sub-Chapter C of the Washington Administrative Code.

(c) Except in cases of fraud or misrepresentation or instances in which Caremark has not been provided reasonable access to information under Provider's control, Caremark shall pay Provider consistent with the following minimum standards: (i) 95% of clean claims received during a month, shall be paid within thirty (30) days of receipt by Caremark; and (ii) 95% of all claims received during a month shall be paid or denied within sixty (60) days of receipt by Caremark, unless otherwise agreed in writing by the parties on a claim-by-claim basis. Caremark shall pay Provider interest at the rate of 1% per month on all undenied and unpaid clean claims more than sixty-one (61) days old and which are not paid in accordance with (i) and (ii) above. For purposes of this Section 5(c), "clean claim" shall mean a claim that has no defect or impropriety, including any lack of required substantiating documentation, or particular circumstances requiring special treatment that prevents timely payments from being made on the claim. Claim denials will include the specific reason for the denial. If the denial is for the failure to meet medical necessity criteria or similar grounds, then upon Provider's request, Caremark will promptly disclose the supporting basis for the decision. Provider has the right to audit Caremark's denial of claims. Wash. Admin. Code § 284-43-321(2)(a).

(d) Except in the case of fraud, or as provided in subsections (1) and (2) below, Caremark may not (i) request a refund from Provider of a payment previously made to satisfy a claim unless it does so in writing within twenty-four (24) months after the date that the payment was made, or (ii) request that a contested refund be paid any sooner than six (6) months after receipt of the request. If Provider fails to contest, in writing, a request made under (i) or (ii) above within thirty (30) days of its receipt, the request shall be deemed accepted and the refund must be paid.

   (1) Caremark shall not, if doing so for reasons related to coordination of benefits with another entity responsible for payment of a claim (i) request a refund from Provider of a payment previously made to satisfy a claim unless it does so in writing within thirty (30) months after the date that the payment was made, or (ii) request that a contested refund be paid any sooner than six (6) months after receipt of the request. If Provider fails to contest, in writing, a request made under (i) or (ii) above within thirty (30) days of its receipt, the request shall be deemed accepted and the refund must be paid.

   (2) Caremark may, at any time, request a refund from Provider of a payment previously made to satisfy a claim if (i) a third party, including a government entity is found responsible for satisfaction of the claim as a consequence of liability imposed by law, and (ii) Caremark is unable to recover directly from the third party because the third party has either already paid or will pay Provider for the services covered by the claim.

   (3) This Section 5(d) does not prohibit Provider from choosing at any time to refund to Caremark any payment previously made to satisfy a claim.

   (4) This Section 5(d) does not apply to claims for services provided under Medicare.

   [Wash. Rev. Code §§ 48.43.005(16); 48.43.600; Chapter 70.127.]

(e) Except in the case of fraud, or as provided in subsection (1) below, Provider may not (i) request additional payment from Caremark to satisfy a claim unless it does so in writing to Caremark within twenty-four (24) months after the date the claim was denied or payment intended to satisfy the claim was made, or (B) request that the additional payment be made any sooner than six (6) months after receipt of the request. Any such request must specify why Provider believes Caremark owes the additional payment.

   (1) Provider may not, if doing so for reasons related to coordination of benefits with another entity responsible for payment of a claim (i) request additional payment from Caremark to satisfy a claim unless it does so in writing to Caremark within thirty (30) months after the date the claim was denied or payment intended to satisfy the Claim was made, or (ii) request that the additional payment be made any sooner than six (6) months after receipt of the request. Any such request must specify why Provider believes Caremark owes the additional payment, and include the name and mailing address of any entity that has disclaimed responsibility for payment of the claim.

RECEIVED

JUL 0 7 2014                Initial

(2) This Section 5(e) does not prohibit Caremark from choosing at any time to make additional payments to Provider to satisfy a claim.

(3) This Section 5(e) does not apply to claims for services provided under Medicare.

[Wash. Rev. Code § 48.43.605]

### Section 11    Entire Agreement

Section 11 **Entire Agreement** of the Provider Agreement is hereby deleted and replaced with the following:

This Agreement constitutes the entire agreement between Provider and Caremark.  Provider's non-compliance with any of the provisions in this Agreement will be a breach of the Agreement.  In the event there is a conflict between any of the provisions in this Agreement or Provider Manual and a provision in Appendix B of this Agreement, the terms of Appendix B shall govern.

### Section 13    Lawful Interpretation and Jurisdiction

Section 13 **Lawful Interpretation and Jurisdiction** of the Provider Agreement is hereby deleted and replaced with the following:

Whenever possible, each provision of this Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect.  Unless otherwise mandated by applicable law, this Agreement will be construed, governed and enforced in accordance with the laws of the State of Washington without regard to choice of law provisions.

### Section 15    Term and Termination

A new Section 15 **Term and Termination** of the Provider Agreement is hereby added to the Agreement:

(a)  Termination for Cause

(1)  If Provider fails to meet any of the credentialing requirements or breaches any of the terms set forth in the Provider Agreement, Caremark may immediately terminate the Provider Agreement.

(2)  Provider must abide by the provisions and terms set forth in the Provider Agreement. Nonadherence to any of the provisions set forth in the Provider Agreement, is a breach of the Provider Agreement and subject to immediate termination and other remedies.

(3)  Caremark may immediately terminate the Provider Agreement if: (i) unless otherwise precluded by Law, Provider makes an assignment for the benefit of creditors, files a petition in bankruptcy (whether voluntary or involuntary), is adjudicated insolvent or bankrupt, a receiver or trustee is appointed with respect to a substantial part of its property or a proceeding is commenced against it which will substantially impair its ability to perform the Provider Agreement; (ii) any court, governmental, or regulatory agency issues to Provider an order to cease and desist from providing Pharmacy Services; (iii) ownership of Provider is transferred to a new owner, or if the right to control the operation of the business of Provider is transferred to a different person or entity; or (iv) a levy, writ of garnishment, attachment, execution or similar item is served upon Provider and not removed within ten (10) days from the date of service.

(4)  Caremark may in its sole and absolute discretion terminate the Provider Agreement if Caremark has reason to believe that Provider has engaged in, or is engaging in, any behavior which (1) appears to pose a significant risk to the health, welfare, or safety of Eligible Persons or general public; (2) implies a failure to maintain proper licensure and related requirements for licensure; or (3) otherwise reflects negatively upon the Provider's ability to fulfill the requirements of the Provider Agreement.

(5)  These termination rights are in addition to any and all other rights and remedies that may be available to Caremark under the

RECEIVED    Initial

JUL 0 7 2014

Provider Agreement or at Law or equity.

(6) The terms of this Termination for Cause section apply notwithstanding any other provision in the Provider Agreement.

(b) Termination without Cause

(1) Caremark may at any time terminate the Provider Agreement without cause upon sixty (60) days notice to Provider or such longer time as required by Law.

(2) Caremark may terminate Provider from participating in providing Pharmacy Services to specific Plans without cause upon sixty (60) days (or such longer time as required by Law) notice to Provider, regardless of the network(s) in which Provider participates.

(3) Provider may terminate the Provider Agreement without cause upon sixty (60) days' (or such longer time as required by Law) prior written notice to Caremark. Except as otherwise may be required with respect to any Caremark national network, Regulated Entity-specific network, or applicable Law, Provider may terminate participation in any Caremark national network or Regulated Entity-specific network by giving Caremark sixty (60) days' prior written notice specifying the date of termination and the name(s) of the national network(s) or Regulated Entity-specific network(s) in which Provider will no longer participate. Absent the prior written consent of Caremark, Provider may not elect to participate in a Caremark national network or Regulated Entity-specific network for thirty (30) days following Provider's termination of participation in such network.

(4) The terms of this Termination without Cause section apply notwithstanding any other provision in the Provider Agreement.

(c) Rights and Remedies in the Event of Termination or Breach

(1) In the event of a termination of the Provider Agreement with Caremark for any reason, Provider must surrender the Provider Agreement, Provider Manual, other materials related to products, programs, services, and Plan Sponsor announcements provided by Caremark to Provider or in Provider's possession or control.

(2) In the event Provider breaches any provision of the Provider Agreement, in addition to all other termination rights, Caremark shall have the right to (i) suspend any and all obligations of Caremark under and in connection with the Provider Agreement, (ii) impose reasonable handling, investigation and/or improper use fees, and/or (iii) offset against any amounts owed to Provider under the Provider Agreement (including amounts that are paid to Caremark on behalf of a Plan Sponsor) or under any other agreement between Caremark and Provider, any amounts required to be paid by Provider to Caremark. These rights and remedies are in addition to any other rights and remedies that may be available to Caremark under the Provider Agreement or at Law or equity.

(3) In the event that this Agreement is terminated, Caremark shall make a good faith effort to assure that written notice of termination is provided to all Eligible Persons seen by Provider on a regular basis within fifteen (15) business days of receipt or issuance of the notice of termination.

[Wash. Admin. Code § 284-43-320(7)]

### Section 16      Dispute Resolution

A new Section 16 **Dispute Resolution,** is hereby added to the Agreement:

In the event of a dispute between Caremark and Provider, a fair, prompt and mutual dispute resolution process shall be used consisting of the following: (A) the parties shall hold an initial meeting at which all parties are present or represented by individuals with authority regarding the matters in dispute; the meeting shall be held within thirty (30) days after the issuance by a party of a notice of dispute, unless the parties otherwise agree in writing to a different schedule; (B) if, within thirty (30) days following the initial meeting, the parties have not resolved the dispute, the dispute shall be submitted to non-binding mediation directed by a mediator who

RECEIVED

JUL 0 7 2014      Initial

is mutually agreeable to the parties and who is not regularly under contract to or employed by either of the parties; (C) if, after a period of 60 days following commencement of mediation, the parties are unable to resolve the dispute, either party may initiate non-binding arbitration or pursue any other remedy available at law. Wash. Rev. Code § 48.43.055; Wash. Admin. Code §§ 284-43-320(11); 284-43-322.

RECEIVED

JUL 0 7 2014

Initial

# EXHIBIT A-27

> CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
> DO NOT DISCLOSE

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider").   Caremark and Provider agree as follows:

1.  **Definitions.**  Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2.  **Credentialing.**  Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law.  Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3.  **Provider Services and Standards.**  Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law.  Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents.  Caremark may inspect all records of Provider relating to the Agreement.

4.  **Eligible Person Identification and Cost Share.**  Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person.  With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark.  Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark.  Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5.  **Network Participation and Payment.**  Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein.  Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A.  Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6.  **Compliance with Law.**  Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7.  **Indemnification.**  Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.



kwiktag *   174 869 386

**RECEIVED**

**OCT 2 4 2013**

Caremark Provider Agreement

Initial

1

10/24/2013   10:22AM

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

8.    **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.    **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10.   **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11.   **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12.   **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13.   **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14.   **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

**RECEIVED**

OCT 2 4 2013

2



Initial

Caremark Provider Agreement

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

Any changes to this Agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: AHF Pharmacy

NCPDP#: 4231914

NPI # 1316374507

By:

(Signature of authorized agent)

Lyle Honig
(Print name of authorized agent)

Date: 10-23-2013

******ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED

Caremark, L.L.C.

(Signature of authorized agent)

John M. Lavin
By: SVP Provider Network Services

Date

CaremarkPCS, L.L.C.

(Signature of authorized agent)

By:
John M. Lavin
Date SVP Provider Network Services

**RECEIVED**

OCT 24 2013

Initial

Caremark Provider Agreement

3

10/24/2013 10:22AM

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

**RECEIVED**

OCT 2 4 2013



Initial

Caremark Provider Agreement

4

10/24/2013    10:22AM

# EXHIBIT A-28

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

073012-4929595-37492
AIDS HEALTHCARE FOUNDATION
Attn: JACQUELINE QUINTANILLA
6255 W SUNSET BLVD 21 FL
LOS ANGELES, CA 90028-

RECEIVED _____ Initial

OCT 12 2012

Caremark Provider Agreement
9-15-2009

kwiktag® 158 503 740

10/11/2012   3:57PM

8. **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9. **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

RECEIVED

OCT 1 2 2012

Initial

Any changes to this agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: _A H F. P h u r m a c y_

NCPDP#: _4934837_

NPI # _1 0 5 8 6 7 0 9 4 3_

By: _____
(Signature of authorized agent)

_K. Scott Carruthers_
(Print name of authorized agent)

Date: _9/24/2012_

Caremark, L.L.C. _____
John M. Lavin
SVP Provider Network Services
(Signature of Officer)

By:_____
(Print name of Officer)

Date_____

CaremarkPCS _____
John M. Lavin
SVP Provider Network Services
(Signature of Officer)

By: _____
(Print name of Officer)

Date_____

```
******ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED
```

```
CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE
```

RECEIVED

OCT 12 2012

_Initial_

Caremark Provider Agreement
9-15-2009

3

10/11/2012   3:57PM

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; or (iv) Provider's U&C price less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

## CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT – DO NOT DISCLOSE

RECEIVED

OCT 1 2 2012

Initial

Caremark Provider Agreement
9-15-2009

4

10/11/2012   3:57PM



Dear Pharmacy Provider:

Enclosed with this enrollment packet is a Caremark Provider Agreement (labeled "Caremark Washington Provider Agreement" on the bottom left hand corner) approved and mandated by the Washington Office of the Insurance Commissioner for use in the state of Washington for our plan sponsor client Aetna. Therefore, this specific Caremark Provider Agreement is only applicable to your prescriptions claims for Aetna members.

If you have any questions related to enrollment, please call the Caremark Pharmacy Provider Message Center at 480-391-4623.


Thank you,
Caremark Network Services

This communication and any attachments may contain confidential and/or privileged information. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify the sender immediately by telephone and destroy all copies of this communication and any attachments. This communication is a Caremark Document within the meaning of the Provider Manual.

RECEIVED

OCT 1 2 2012


10/11/2012   3:57PM

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1.  **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms attached hereto as Appendix A.

2.  **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3.  **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4.  **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5.  **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6.  **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in Appendix B attached hereto.

7.  **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

RECEIVED

OCT 1 2 2012        Initial

10/11/2012  3:57PM

8.   **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.   **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10.  **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11.  **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12.  **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13.  **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14.  **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

RECEIVED

OCT 1 2 2012

Kee
Initial

10/11/2012   3:57PM

Any changes to this agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: AHF Pharmacy

NCPDP#: 4934837

NPI # 1058360943

(Signature of authorized agent)

K. Scott Carruthers
(Print name of authorized agent)

Date: 9/24/2012

Caremark, L.L.C.
John M. Lavin
SVP Provider Network Services
(Signature of Officer)

By:
(Print name of Officer)

Date

CaremarkPCS, L.L.C.
John M. Lavin
SVP Provider Network Services
(Signature of Officer)

By:
(Print name of Officer)

Date

******ATTENTION********

ALL PAGES MUST BE INITIALED BY
AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED

RECEIVED

OCT 1 2 2012

Initial

Caremark Washington Provider Agreement
10-21-2010

3

10/11/2012   3:57PM

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (i) Provider participates in as of the date of this Agreement; (ii) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (iii) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (iv) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; or (iv) Provider's U&C price less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

RECEIVED

OCT 1 2 2012

Initial

10/11/2012   3:57PM

# APPENDIX A

# GLOSSARY OF TERMS

**AWP or Average Wholesale Price** means the current wholesale cost of a given drug as defined in the latest edition of the First DataBank Blue Book, Medi-Span (with supplements), MICROMEDEX, or any other similar nationally recognized reference which Caremark may reasonably select from time to time.

**Confidential Caremark Information** means any nonpublic information or data (including but not limited to products, programs, services, business practices, procedures, MAC lists, reimbursement pricing information, prices paid to Provider for individual claims, or other information acquired from the contents of the Provider Agreement) obtained from or provided by Caremark or any Plan Sponsor to Provider through or in connection with the Provider Agreement that is confidential and proprietary to Caremark.

**Covered Item** means any drug or device covered, in whole or in part, in accordance with and subject to the terms of a Plan covering an Eligible Person.

**Dispensing Pharmacy** means the pharmacy identified by the NCPDP/NPI number under which the claim was submitted to and adjudicated by Caremark and where the Pharmacy Services were provided to the Eligible Person.

**Eligible Person** means a person or animal entitled to a Covered Item pursuant to a Plan.

**Law** means any Federal, State, local or other constitution, charter, act, statute, Law, ordinance, code, rule, regulation, order, specified standards, or objective criteria contained in or which are (by express reference or necessary implication) a condition of granting any applicable permit, license or approval required by Caremark, Provider, or a Plan Sponsor, or other legislative or administrative action of the United States of America, or state or any agency, department, authority, political subdivision or other instrumentality thereof or a decree or judgment or order of a court.

**MAC or Maximum Allowable Cost** means a unit price that has been established as the reimbursement amount to Provider for certain multiple-source drugs without regard to the specific manufacturer whose drug is dispensed.

**Patient Pay Amount** means the amount an Eligible Person must pay to Provider at the time a Covered Item is dispensed as indicated by the claims system, which may include but is not limited to copayments, coinsurance, deductibles, transaction fees, access fees, and/or taxes.

**Pharmacy Services/Provider Services** means all services including the provision of prescription drugs usually and customarily rendered by a Provider licensed to provide pharmacy services in the normal course of business, including services mandated by applicable Law. Pharmacy Services may include, but not be limited to: the maintenance of Eligible Person profiles; the interpretation of prescriptions; the selection of medications and medical devices; the sale of compounding or dispensing of medications and medical devices (also includes over-the-counter medications [OTCs] and supplies covered by or used in conjunction with a pharmacy benefit); the counseling of Eligible Persons, which may consist of information about the proper storage, dosing, side effects, potential interactions and use of the medication dispensed; the monitoring of appropriate drug use; and the implementation of drug utilization review programs and other clinical programs and services.

**Plan** means that portion of Plan Sponsor's pharmacy benefit plan that relates to Covered Items with respect to a group of Eligible Persons.

**Plan Sponsor** means the entity that contracts with Caremark or any of Caremark Rx, L.L.C.'s affiliates for pharmacy benefit management services, which entity could be, among other things, an insurance company, self-insured group, health maintenance organization, preferred provider organization, multi-employer trust or third party administrator.

RECEIVED

OCT 1 2 2012

*Ksc*
Initial

10/11/2012   3:57PM

**Prescriber** means a physician, dentist, physician's assistant, optometrist or other health care professional authorized by law to write prescriptions for prescription drugs.

**Price Type** means a current price of a given drug as defined by a nationally recognized reference that Caremark may reasonably select from time to time, which may include, but is not limited to: AWP (Average Wholesale Price), WAC (Wholesale Acquisition Cost), AMP (Average Manufacturer Price), ASP (Average Sales Price) or DP (Direct Price).

**Third-Party Agreement** means an agreement between Caremark and a Caremark client in which Caremark serves as an auditor for that client's participating network pharmacies.

**Usual and Customary Price or U&C** means the lowest price Provider would charge to a particular customer if such customer were paying cash for an identical prescription on that particular day at that particular location. This price must include any applicable discounts offered to attract customers.

RECEIVED

OCT 1 2 2012

_Initial_

10/11/2012   3:57PM

# APPENDIX B

# WASHINGTON-SPECIFIC REQUIREMENTS

In the event any provision in this Agreement conflicts with the terms of this Appendix B, the terms of this Appendix B shall govern. To the extent that Provider provides Pharmacy Services to Eligible Persons enrolled with a health maintenance organization , insurer, carrier, or health care services contractor licensed and regulated under Washington law (collectively and/or individually, "Regulated Entity"), Provider agrees to comply with all requirements for participation as a provider in Washington and all applicable laws relating thereto. Without limiting the generality of the foregoing, and notwithstanding anything in the Provider Agreement to the contrary, Provider agrees as follows:

## Section 3        Provider Services and Standards

Section 3 **Provider Services and Standards** of the Provider Agreement shall be deleted and replaced with the following:

(a) Provider agrees to provide Pharmacy Services in accordance with the terms of this Agreement. Provider further agrees to comply with and follow the requirements set forth in the Provider Manual received by Provider from Caremark. Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the Prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all claims for such Pharmacy Services electronically to Caremark in accordance with the written directions provided by Caremark.

(b) Caremark agrees to provide reasonable notice of not less than sixty (60) days of changes to the Agreement and/or Provider Manual that affect Provider's reimbursement and that affect health care service delivery unless changes to federal or state law or regulations make such advance notice impossible, in which case notice shall be provided as soon as possible. Provider may terminate this Agreement without cause pursuant to Section 15(b) of the Agreement if Provider does not agree with the said changes, .

(c) Provider shall furnish services to Eligible Persons without regard to an Eligible Person's enrollment in a Plan as a private purchaser of the Plan or as a participant in publicly financed programs of health care services.

(d) Caremark may inspect all records of Provider relating to the Agreement.

(e) Caremark shall, promptly upon execution of this Agreement, notify Provider of its responsibilities with respect to applicable administrative policies and programs, including, but not limited to, payment terms, utilization review, quality assessment and improvement programs, credentialing, grievance procedures, data reporting requirements, confidentiality requirements and any applicable federal or state requirements, in each case, to the extent not provided in this Agreement.

(f) Provider agrees to make available its books, records (including health records) to appropriate state and federal governmental authorities involved in assessing the quality of care or investigating the grievances or complaints of Eligible Persons, subject to applicable state and federal Laws related to the confidentiality of medical or health records.

[Wash. Rev. Code § 48.43.505; Wash. Admin. Code § 284-43-320(4), (6) & (8)].

## Section 4        Eligible Person Identification and Cost Share

Section 4 **Eligible Person Identification and Cost Share** of the Provider Agreement, shall be deleted and replaced with the following:

RECEIVED _Ku_
Initial

OCT 1 2 2012