# EXHIBIT A-42



# Base Agreement

CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. Definitions. Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. Credentialing. Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. Provider Services and Standards. Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. Eligible Person Identification and Cost Share. Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. Network Participation and Payment. Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. Compliance with Law. Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. Indemnification. Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8. Limitation on Liability. In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9. Term. The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. Assignment. Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. Entire Agreement. This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. Waiver. Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. Lawful Interpretation and Jurisdiction. Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. Headings.  The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

SCHEDULE A
NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A".  Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.  The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form.  If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim.  AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) Provider's submitted Gross Amount Due less the applicable Patient Pay Amount.

(X) By selecting this option, Provider, through its duly authorized representative, executes this Provider Agreement (which includes the Provider Manual) with CVS/caremark, and acknowledges receipt of the Provider Manual as available through this link.

( ) I decline to execute the Provider Agreement. If you select this option, you understand that you may not use the Pharmacy Portal to continue the enrollment process.

Signature:

      ahfwestpalmbeach/Scott Carruthers
      02/21/2019 04:53:09 PM
      AIDS Healthcare Foundation
      5739961/1972076263
      1411 N Flagler Dr Ste 9300
      West Palm Beach, FL 33401

# EXHIBIT A-43

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF CAREMARK

# PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark IPA, L.L.C., a New York limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

kwiktag®    155 876 682

073012-3323324-37491
AIDS HEALTHCARE FOUNDATION
Attn: JACQUELINE QUINTANILLA
6255 W SUNSET BLVD 21 FL
LOS ANGELES, CA 90028-

K Sc
Initial

New York Providers
Confidential and Proprietary
Caremark Provider Agreement
10-14-2010

RECEIVED

SEP 26 2012

1

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF CAREMARK

7. **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8. **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9. **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

_Illegible signature_

Initial

**RECEIVED**

SEP 2 6 2012

New York Providers
Confidential and Proprietary
Caremark Provider Agreement
10-14-2010

2

09/25/2012  2:34PM

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF CAREMARK

13.   **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14.   **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

Any changes to this agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: _Mom S Pharmacy INC._

NCPDP#: _5805924_

NPI# _1987185272_

_____
(Signature of authorized agent)

_K. Scott Carruthers_

(Print name of authorized agent)

Date: _09/24/2012_

Caremark IPA, L.L.C.

_____
(Signature of John M. Lavin
SVP Provider Network Services

By:_____
(Print name of Officer)

Date_____

┌─────────────────────────────────┐
│  ******ATTENTION********         │
│                                  │
│  PAGES 1, 2, 3 AND 4 MUST BE     │
│  INITIALED BY AUTHORIZED AGENT   │
│  BEFORE CONTRACT WILL BE         │
│  ACCEPTED                        │
└─────────────────────────────────┘

_KSc_
Initial

**RECEIVED**

SEP 2 6 2012

New York Providers
Confidential and Proprietary
Caremark Provider Agreement
10-14-2010

3

09/25/2012   2:34PM

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF CAREMARK

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount and Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; or (iv) Provider's U&C price less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

*Kes*

Initial

RECEIVED

SEP 2 6 2012

New York Providers
Confidential and Proprietary
Caremark Provider Agreement
10-14-2010

4

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS Health, L.L.C., an Arizona limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1.  **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2.  **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3.  **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4.  **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5.  **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6.  **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7.  **Indemnification.** All liability arising from the provision of prescription drugs and services rendered by Provider will be the sole responsibility of Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

Initial

RECEIVED

FEB 7 – 2012

1

8.   **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.   **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10.  **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11.  **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12.  **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13.  **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14.  **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

_Vc_
Initial

RECEIVED

FEB 7 – 2012

2

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

Any changes to this agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: AHF Pharmacy - Melville    Caremark, L.L.C.

NCPDP#: 5805924

NPI#: 1871852772

By: _____    By: _____
(Signature of authorized agent)         (Print name of Officer)

(Signature of Officer)
John M. Lavin
BVP Provider Network Services

h. Scott Carruthers    Date _____
(Print name of authorized agent)

Date: 2-1-2013    CaremarkPCS Health, L.L.C.

(Signature of Officer)
John M. Lavin
BVP Provider Network Services

******ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED    (Print name of Officer)
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED

RECEIVED

FEB. 7 - 2012

3

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE**

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; or (iv) Provider's U&C price less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv). Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

RECEIVED

FEB 7 - 2012

Confidential and Proprietary
Caremark Provider Agreement
9/15/2009 Revised 04-26-2012

Initial

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# ADDENDUM TO PROVIDER AGREEMENT

The Provider Agreement is hereby amended, and the parties agree to the following as an addendum to the Provider Agreement.

1. Under the section heading titled "Indemnification", the word "manufacturing" is deleted.

The parties hereto have caused this Addendum to Provider Agreement to be executed by their respective officers or representatives duly authorized so to do effective the same date as the effective date of the Provider Agreement.    By signing below, the undersigned Provider represents and warrants to Caremark that it has read the Addendum to the Provider Agreement, and agrees to be bound by the terms of the Addendum.

Pharmacy Name: _AHF Pharmacy – Melville_

NPI#: _1871852772_

NCPDP#: _5805924_

By: _M. Scott Carruthers_
(print name of authorized agent)

_[signature]_
(signature of authorized agent)

Date: _2-1-2013_

Caremark, L.L.C.

By: _[signature]_ John M. Lavin
(Print name of Officer) SVP Provider Network Services

_____
(Signature of Officer)

Date: _____

CaremarkPCS Health, L.L.C.

By: _[signature]_
(Print name of Officer) John M. Lavin
SVP Provider Network Services

_____
(Signature of Officer)

Date: _____

RECEIVED

FEB. 7 – 2012

Confidential and Proprietary
Caremark Provider Agreement
9/15/2009 Revised 04-26-2012

5

# EXHIBIT A-44

> THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF CAREMARK

# PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark IPA, L.L.C., a New York limited liability company ("Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1.  **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2.  **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3.  **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4.  **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to n Covered Item.

5.  **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6.  **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

    **New York State Department of Health Standard Clauses:** "New York State Department of Health Standard Clauses for Managed Care Provider/IPA Contracts," attached to this Agreement as Appendix A are expressly incorporated into this Agreement and are binding upon the parties to this Agreement. In the event of any inconsistent or contrary language between the Standard Clauses and any other part of this Agreement, including but not limited to appendices, amendments and exhibits, the parties agree that the provisions of the Standard Clauses shall prevail, except to the extent applicable law requires otherwise and/or to the extent a provision of this Agreement exceeds the minimum requirements of the Standard Clauses.

7.  **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding,

Initial

RECEIVED

MAR 0 5 2014

kwiktag *    165 628 401

03/04/2014   2:17PM

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF CAREMARK

dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8.    **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.    **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10.   **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11.   **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12.   **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13.   **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14.   **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

**RECEIVED**

**MAR 0 5 2014**

_____
Initial

Caremark New York Provider Agreement 11-14-2012

2

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE
CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION
CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND
MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN
CONSENT OF CAREMARK

Any changes to this agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: AIDS Healthcare Foundation dba AHF Pharmacy

NCPDP#: 5809631

NPI# 1134541626

By: _____
(Signature of authorized agent)

Lyle Honig

(Print name of authorized agent)

Date: 3-3-2014

Caremark IPA, L.L.C.
John M. Lavin

(Signature of Officer) SVP Provider Network Services

By: _____
(Print name of Officer)

Date _____

******ATTENTION********

PAGES 1-11 MUST BE INITIALED BY
AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED

RECEIVED

MAR 0 5 2014

Initial

03/04/2014   2:17PM

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE
CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION
CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND
MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN
CONSENT OF CAREMARK

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount and Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; or (iv) Provider's U&C price less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

RECEIVED

MAR 0 5 2014

Initial

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE
CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION
CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND
MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN
CONSENT OF CAREMARK

# Appendix A

# New York State Department of Health Standard Clauses for Managed Care Provider/IPA Contracts Appendix

(Revised March 1, 2011)

Notwithstanding any other provision of this agreement, contract, or amendment (hereinafter "the Agreement" or "this Agreement") the parties agree to be bound by the following clauses which are hereby made a part of the Agreement. Further, if this Agreement is between a Managed Care Organization and an IPA, or between an IPA and an IPA, such clauses must be included in IPA contracts with providers, and providers must agree to such clauses.

## A. Definitions for Purposes of This Appendix

"Managed Care Organization" or " MCO" shall mean the person, natural or corporate, or any groups of such persons, certified under Public Health Law Article 44, who enter into an arrangement, agreement or plan or any combination of arrangements or plans which provide or offer, or which do provide or offer, a comprehensive health services plan.

"Independent Practice Association" or "IPA" shall mean an entity formed for the limited purpose of arranging by contract for the delivery or provision of health services by individuals, entities and facilities licensed or certified to practice medicine and other health professions, and, as appropriate, ancillary medical services and equipment, by which arrangements such health care providers and suppliers will provide their services in accordance with and for such compensation as may be established by a contract between such entity and one or more MCOs. "IPA" may also include, for purposes of this Agreement, a pharmacy or laboratory with the legal authority to contract with other pharmacies or laboratories to arrange for or provide services to enrollees of a New York State MCO.

"Provider" shall mean physicians, dentists, nurses, pharmacists and other health care professionals, pharmacies, hospitals and other entities engaged in the delivery of health care services which are licensed, registered and/or certified as required by applicable federal and state law.

## B. General Terms and Conditions

1.  This Agreement is subject to the approval of the New York State Department of Health and if implemented prior to such approval, the parties agree to incorporate into this Agreement any and all modifications required by the Department of Health for approval or, alternatively, to terminate this Agreement if so directed by the Department of Health, effective sixty (60) days subsequent to notice, subject to Public Health Law §4403(6)(e). This Agreement is the sole agreement between the parties regarding the arrangement established herein.

2.  Any material amendment to this Agreement is subject to the prior approval of the Department of Health, and any such amendment shall be submitted for approval at least thirty (30) days, or ninety (90) days if the amendment adds or materially changes a risk sharing arrangement that is subject to Department of Health review, in advance of anticipated execution. To the extent the MCO provides and arranges for the provision of comprehensive health care services to enrollees served by the Medical Assistance Program, the MCO shall notify and/or submit a copy of such material amendment to DOH or New York City, as may be required by the Medicaid managed care contract between the MCO and DOH (or New York City) and/or the Family Health Plus contract between the MCO and DOH.

3.  Assignment of an agreement between an MCO and (1) an IPA, (2) institutional network provider, or (3) medical group provider that serves five percent or more of the enrolled population in a county, or the assignment of an agreement between an IPA and (1) an institutional provider or (2) medical group provider that serves five percent or more of the enrolled population in a county, requires the prior approval of the Commissioner of Health.

RECEIVED

Initial

FEB 0 4 2014

02/04/2014  2:48PM

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF CAREMARK

4.  The Provider agrees, or if the Agreement is between the MCO and an IPA or between an IPA and an IPA, the IPA agrees and shall require the IPA's providers to agree, to comply fully and abide by the rules, policies and procedures that the MCO (a) has established or will establish to meet general or specific obligations placed on the MCO by statute, regulation, or DOH or SID guidelines or policies and (b) has provided to the Provider at least thirty (30) days in advance of implementation, including but not limited to:

    •   quality improvement/management;
    •   utilization management, including but not limited to precertification procedures, referral process or protocols, and reporting of clinical encounter data;
    •   member grievances; and
    •   provider credentialing.

5.  The Provider or, if the Agreement is between the MCO and an IPA, or between an IPA and an IPA, the IPA agrees, and shall require its providers to agree, to not discriminate against an enrollee based on color, race, creed, age, gender, sexual orientation, disability, place of origin, source of payment or type of illness or condition.

6.  If the Provider is a primary care practitioner, the Provider agrees to provide for twenty-four (24) hour coverage and back up coverage when the Provider is unavailable. The Provider may use a twenty-four (24) hour back-up call service provided appropriate personnel receive and respond to calls in a manner consistent with the scope of their practice.

7.  The MCO or IPA which is a party to this Agreement agrees that nothing within this Agreement is intended to, or shall be deemed to, transfer liability for the MCO's or IPA's own acts or omissions, by indemnification or otherwise, to a provider.

8.  Notwithstanding any other provision of this Agreement, the parties shall comply with the provisions of the Managed Care Reform Act of 1996 (Chapter 705 of the Laws of 1996) Chapter 551 of the Laws of 2006, Chapter 451 of the Laws of 2007 and Chapter 237 of the Laws of 2009 with all amendments thereto.

9.  To the extent the MCO enrolls individuals covered by the Medical Assistance and/or Family Health Plus programs, this Agreement incorporates the pertinent MCO obligations under the Medicaid managed care contract between the MCO and DOH (or New York City) and/or the Family Health Plus contract between the MCO and DOH as if set forth fully herein, including:
    a.  the MCO will monitor the performance of the Provider or IPA under the Agreement, and will terminate the Agreement and/or impose other sanctions, if the Provider's or IPA's performance does not satisfy standards set forth in the Medicaid managed care and/or Family Health Plus contracts;
    b.  the Provider or IPA agrees that the work it performs under the Agreement will conform to the terms of the Medicaid managed care contract between the MCO and DOH (or between the MCO and New York City) and/or the Family Health Plus contract between the MCO and DOH, and that it will take corrective action if the MCO identifies deficiencies or areas of needed improvement in the Provider's or IPA's performance; and
    c.  The Provider or IPA agrees to be bound by the confidentiality requirements set forth in the Medicaid managed care contract between the MCO and DOH or between the MCO and New York City) and/or the Family Health Plus contract between the MCO and DOH.
    d.  The MCO and the Provider or IPA agree that a woman's enrollment in the MCO's Medicaid managed care or Family Health Plus product is sufficient to provide services to her newborn, unless the newborn is excluded from enrollment in Medicaid managed care or the MCO does not offer a Medicaid managed care product in the mother's county of fiscal responsibility.
    e.  The MCO shall not impose obligations and duties on the Provider or IPA that are inconsistent with the Medicaid managed care and/or Family Health Plus contracts, or that impair any rights accorded to DOH, the local Department of Social Services, or the United States Department of Health and Human Services.

RECEIVED ____

Initial

FEB 0 4 2014

6

02/04/2014  2:48PM

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE
CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION
CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND
MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN
CONSENT OF CAREMARK

f.   The Provider or IPA agrees to provide medical records to the MCO for purposes of determining newborn eligibility for Supplemental Security Income where the mother is a member of the MCO and for quality purposes at no cost to the MCO.

g.   The Provider or IPA agrees, pursuant to 31 U.S.C. § 1352 and ICFR Part 93, that no Federally appropriated funds have been paid or will be paid to any person by or on behalf of the Provider/IPA for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the award of any Federal loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.   The Provider or IPA agrees to complete and submit the "Certification Regarding Lobbying," Appendix A-1 attached hereto and incorporated herein, if this Agreement exceeds $100,000. If any funds other than Federally appropriated funds have been paid or will be paid to any person for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of a member of Congress, in connection with the award of any Federal Contract, the making of any Federal grant, the making of any Federal loan, the entering of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement, and the Agreement exceeds $100,000 the Provider or IPA shall complete and submit Standard Form-LLL "Disclosure Form to Report Lobbying," in accordance with its instructions.

h.   The Provider agrees to disclose to MCO on an ongoing basis, any managing employee that has been convicted of a misdemeanor or felony related to the person's involvement in any program under Medicare, Medicaid or a Title XX services program (Block grant programs).

i.   The Provider agrees to monitor its employees and staff against the List of Excluded Individuals and Entities (LEIE) and excluded individuals posted by the OMIG on its Website.

j.   The Provider agrees to disclose to MCO complete ownership, control, and relationship information.

k.   Provider agrees to obtain for MCO ownership information from any subcontractor with whom the provider has had a business transaction totaling more than $25,000, during the 12 month period ending on the date of the request made by SDOH, OMIG or DHHS. The information requested shall be provided to MCO within 35 days of such request.

10.   The parties to this Agreement agree to comply with all applicable requirements of the Federal Americans with Disabilities Act.

11.   The Provider agrees, or if the Agreement is between the MCO and an IPA or between an IPA and an IPA, the IPA agrees and shall require the IPA's providers to agree, to comply with all applicable requirements of the Health Insurance Portability and Accountability Act; the HIV confidentiality requirements of Article 27-F of the Public Health Law and Mental Hygiene Law § 33.13.

## C. Payment / Risk Arrangements

1.   Enrollee Non-liability. Provider agrees that in no event, including, but not limited to, nonpayment by the MCO or IPA, insolvency of the MCO or IPA, or breach of this Agreement, shall Provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against a subscriber, an enrollee or person (other than the MCO or IPA) acting on his/her/their behalf, for services provided pursuant to the subscriber contract or Medicaid Managed Care contract or Family Health Plus contract and this Agreement, for the period covered by the paid enrollee premium. In addition, in the case of Medicaid Managed Care, Provider agrees that, during the time an enrollee is enrolled in the MCO, he/she/it will not bill the New York State Department of Health or the City of New York for Covered Services within the Medicaid Managed Care Benefit Package as set forth in the Agreement between the MCO and the New York State Department of Health. In the case of Family Health Plus, Provider agrees that, during the time an enrollee is enrolled in the

**RECEIVED** ____ Initial

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE
CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION
CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND
MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN
CONSENT OF CAREMARK

MCO, he/she/it will not bill the New York State Department of Health for Covered Services within the Family Health Plus Benefit Package, as set forth in the Agreement between the MCO and the New York State Department of Health. This provision shall not prohibit the provider, unless the MCO is a managed long term care plan designated as a Program of All-Inclusive Care for the Elderly (PACE), from collecting copayments, coinsurance amounts, or permitted deductibles, as specifically provided in the evidence of coverage, or fees for uncovered services delivered on a fee-for-service basis to a covered person provided that Provider shall have advised the enrollee in writing that the service is uncovered and of the enrollee's liability therefore prior to providing the service. Where the Provider has not been given a list of services covered by the MCO, and/or Provider is uncertain as to whether a service is covered, the Provider shall make reasonable efforts to contact the MCO and obtain a coverage determination prior to advising an enrollee as to coverage and liability for payment and prior to providing the service. This provision shall survive termination of this Agreement for any reason, and shall supersede any oral or written agreement now existing or hereafter entered into between Provider and enrollee or person acting on his or her behalf.

2.   Coordination of Benefits (COB). To the extent otherwise permitted in this Agreement, the Provider may participate in collection of COB on behalf of the MCO, with COB collectibles accruing to the MCO or to the provider. However, with respect to enrollees eligible for medical assistance, or participating in Child Health Plus or Family Health Plus, the Provider shall maintain and make available to the MCO records reflecting COB proceeds collected by the Provider or paid directly to enrollees by third party payers, and amounts thereof, and the MCO shall maintain or have immediate access to records concerning collection of COB proceeds.

3.   If the Provider is a health care professional licensed, registered or certified under Title 8 of the Education Law, the MCO or the IPA must provide notice to the Provider at least ninety (90) days prior to the effective date of any adverse reimbursement arrangement as required by Public Health Law § 4406-c(5-c). Adverse reimbursement change shall mean a proposed change that could reasonably be expected to have a material adverse impact on the aggregate level of payment to a health care professional. This provision does not apply if the reimbursement change is required by law, regulation or applicable regulatory authority; is required as a result of changes in fee schedules, reimbursement methodology or payment policies established by the American Medical Association current procedural terminology (CPT) codes, reporting guidelines and conventions; or such change is expressly provided for under the terms of this Agreement by the inclusion or reference to a specific fee or fee schedule, reimbursement methodology or payment policy indexing scheme.

4.   The parties agree to comply with and incorporate the requirements of Physician Incentive Plan (PIP) Regulations contained in 42 CFR §438.6(h), 42 CFR § 422.208, and 42 CFR § 422.210 into any contracts between the contracting entity (provider, IPA, hospital, etc.) and other persons/entities for the provision of services under this Agreement. No specific payment will be made directly or indirectly under the plan to a physician or physician group as an inducement to reduce or limit medically necessary services furnished to an enrollee.

5.   The parties agree that a claim for home health care services following an inpatient hospital stay cannot be denied on the basis of medical necessity or a lack of prior authorization while a utilization review determination is pending if all necessary information was provided before a member's inpatient hospital discharge, consistent with Public Health Law § 4903.

**D. Records Access**

1.   Pursuant to appropriate consent/authorization by the enrollee, the Provider will make the enrollee's medical records and other personally identifiable information (including encounter data for government-sponsored programs) available to the MCO (and IPA if applicable), for purposes including preauthorization, concurrent review, quality assurance, (including Quality Assurance Reporting Requirements (QARR)), payment processing, and qualification for government programs, including but not limited to newborn eligibility for Supplemental Security Income (SSI) and for MCO/Manager analysis and recovery of overpayments due to fraud and abuse. The Provider will also make enrollee medical records available to the State for management audits, financial audits, program monitoring and evaluation, licensure or certification of facilities or individuals, and as otherwise required by state law. The Provider shall provide copies of such records to DOH at no cost. The Provider (or IPA if applicable) expressly acknowledges that he/she/it shall also provide to the MCO and the State (at no expense to the State), on request, all financial data and reports, and information concerning the appropriateness and quality of services provided, as required by law. These provisions shall survive termination of the contract for any reason.

RECEIVED

FEB 0 4 2014

Initial

02/04/2014   2:48PM

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE
CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION
CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND
MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN
CONSENT OF CAREMARK

2.    When such records pertain to Medicaid or Family Health Plus reimbursable services the Provider agrees to disclose the nature and extent of services provided and to furnish records to DOH and/or the United States Department of Health and Human Services, the County Department of Social Services, the Comptroller of the State of New York, the Office of the Medicaid Inspector General, the New York State Attorney General, and the Comptroller General of the United States and their authorized representatives upon request. This provision shall survive the termination of this Agreement regardless of the reason.

3.    The parties agree that medical records shall be retained for a period of six (6) years after the date of service, and in the case of a minor, for three (3) years after majority or six (6) years after the date of service, whichever is later, or for such longer period as specified elsewhere within this Agreement. This provision shall survive the termination of this Agreement regardless of the reason.

4.    The MCO and the Provider agree that the MCO will obtain consent directly from enrollees at the time of enrollment or at the earliest opportunity, or that the Provider will obtain consent from enrollees at the time service is rendered or at the earliest opportunity, for disclosure of medical records to the MCO, to an IPA or to third parties. If the Agreement is between an MCO and an IPA, or between an IPA and an IPA, the IPA agrees to require the providers with which it contracts to agree as provided above. If the Agreement is between an IPA and a provider, the Provider agrees to obtain consent from the enrollee if the enrollee has not previously signed consent for disclosure of medical records.

E. Termination and Transition
1.    Termination or non-renewal of an agreement between an MCO and an IPA, institutional network provider, or medical group Provider that serves five percent or more of the enrolled population in a county, or the termination or non-renewal of an agreement between an IPA and an institutional Provider or medical group Provider that serves five percent or more of the enrolled population in a county, requires notice to the Commissioner of Health. Unless otherwise provided by statute or regulation, the effective date of termination shall not be less than 45 days after receipt of notice by either party, provided, however, that termination, by the MCO may be effected on less than 45 days notice provided the MCO demonstrates to DOH's satisfaction prior to termination that circumstances exist which threaten imminent harm to enrollees or which result in Provider being legally unable to deliver the covered services and, therefore, justify or require immediate termination.

2.    If this Agreement is between the MCO and a health care professional, the MCO shall provide to such health care professional a written explanation of the reasons for the proposed contract termination, other than nonrenewal, and an opportunity for a review as required by state law. The MCO shall provide the health care professional 60 days notice of its decision to not renew this Agreement.

3.    If this Agreement is between an MCO and an IPA, and the Agreement does not provide for automatic assignment of the IPA's Provider contracts to the MCO upon termination of the MCO/IPA contract, in the event either party gives notice of termination of the Agreement, the parties agree, and the IPA's providers agree, that the IPA providers shall continue to provide care to the MCO's enrollees pursuant to the terms of this Agreement for 180 days following the effective date of termination, or until such time as the MCO makes other arrangements, whichever first occurs. This provision shall survive termination of this Agreement regardless of the reason for the termination.

4.    Continuation of Treatment, The Provider agrees that in the event of MCO or IPA insolvency or termination of this contract for any reason, the Provider shall continue, until medically appropriate discharge or transfer, or completion of a course of treatment, whichever occurs first, to provide services pursuant to the subscriber contract, Medicaid Managed Care contract, or Family Health Plus contract, to an enrollee confined in an inpatient facility, provided the confinement or course of treatment was commenced during the paid premium period. For purposes of this clause, the term "provider" shall include the IPA and the IPA's contracted providers if this Agreement is between the MCO and an IPA. This provision shall survive termination of this Agreement.

RECEIVED

FEB 0 4 2014

Initial

02/04/2014   2:48PM

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE
CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION
CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND
MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN
CONSENT OF CAREMARK

5.    Notwithstanding any other provision herein, to the extent that the Provider is providing health care services to enrollees under the Medicaid Program and/or Family Health Plus, the MCO or IPA retains the option to immediately terminate the Agreement when the Provider has been terminated or suspended from the Medicaid Program.

6.    In the event of termination of this Agreement, the Provider agrees, and, where applicable, the IPA agrees to require all participating providers of its network to assist in the orderly transfer of enrollees to another provider.

**F. Arbitration**

1.    To the extent that arbitration or alternative dispute resolution is authorized elsewhere in this Agreement, the parties to this Agreement acknowledge that the Commissioner of Health is not bound by arbitration or mediation decisions. Arbitration or mediation shall occur within New York State, and the Commissioner of Health will be given notice of all issues going to arbitration or mediation, and copies of all decisions.

**G. IPA-Specific Provisions**

1.    Any reference to IPA quality assurance (QA) activities within this Agreement is limited to the IPA's analysis of utilization patterns and quality of care on its own behalf and as a service to its contract providers.

RECEIVED

FEB 0 4 2014

Initial

Caremark New York Provider Agreement 11-14-2012

10

02/04/2014  2:48PM

THIS CAREMARK PROVIDER AGREEMENT, INCLUDING THE CAREMARK PROVIDER MANUAL, CONTAINS INFORMATION CONFIDENTIAL AND PROPRIETARY TO CAREMARK, AND MAY NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF CAREMARK

## Appendix A-1

# CERTIFICATION REGARDING LOBBYING

The undersigned certifies, to the best of his or her knowledge, that:

1.  No Federal appropriated funds have been paid or will be paid to any person by or on behalf of the Provider for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of a Member of Congress in connection with the award of any Federal loan, the entering into any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement,

2.  If any funds other than Federal appropriated funds have been paid or will be paid to any person for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress in connection with the award of this Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into any cooperative agreement, or the extension, continuation, renewal, amendment or modification of any Federal contract, grant, loan, or cooperative agreement, and the Agreement exceeds $100,000, the Provider shall complete and submit Standard Form-LLL "Disclosure Form to Reporting Lobby," in accordance with its instructions.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction pursuant to U.S.C. Section 1352. The failure to file the required certification shall subject the violator to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

DATE:                                    2-4-14

TITLE:                                   CFO

PHARMACY; ORGANIZATION:     AHF Pharmacy

PHARMACY NCPCP / NPI:          5809631 / 1134541626

NAME: (PLEASE PRINT)             Lyle Honig

SIGNATURE:

**RECEIVED**

FEB 0 4 2014

Initial

Caremark New York Provider Agreement 11-14-2012

11

# EXHIBIT A-45

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE**

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

RECEIVED

MAY 2 0 2016

_____
Initial

8.  **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.  **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

RECEIVED

MAY 2 0 2016

_____
Initial

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE**

By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: AHF PHARMACY

NCPDP#: 5816282

NPI # 10?3977633

By: _____
(Signature of authorized agent)

SCOTT CARRUTHERS
(Print name of authorized agent)

Date: 05 17 2016

---

Caremark, L.L.C.

_____
John M. Lavin
SVP Provider Network Services
(Signature of authorized agent)

By: _____

Date _____

CaremarkPCS, L.L.C.

_____
John M. Lavin
SVP Provider Network Services
(Signature of authorized agent)

By: _____

Date _____

---

```
*****ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED
```

RECEIVED

MAY 2 0 2016

_____
Initial

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) Provider's submitted Gross Amount Due less the applicable Patient Pay Amount.

RECEIVED

MAY 20 2016

Initial

> **CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
> DO NOT DISCLOSE**

# PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark IPA, L.L.C., a New York limited liability company ("Caremark"), and the undersigned provider ("Provider") for Pharmacy Services provided by Provider to Eligible Persons enrolled with a health maintenance organization licensed under New York Public Health Law. The parties agree that the terms of this Agreement are only applicable to the extent Provider provides Pharmacy Services to Eligible Persons enrolled with a health maintenance organization licensed under New York Public Health Law. Accordingly, Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with **Schedule A.** Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider. Caremark shall handle with Provider any Provider complaints regarding payment issues and concerns.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

   **New York State Department of Health Standard Clauses:** "New York State Department of Health Standard Clauses for Managed Care Provider/IPA Contracts," attached to this Agreement as **Appendix A** are expressly incorporated into this Agreement and are binding upon the parties to this Agreement for Pharmacy Services provided to Eligible Persons enrolled with a health maintenance organization licensed under New York Public Health Law. In the event of any inconsistent or contrary language between the Standard Clauses and any other part of this Agreement, including but not limited to appendices, amendments and exhibits, the parties agree that the provisions of the Standard Clauses shall prevail, except to the extent applicable law requires otherwise and/or to the extent a provision of this Agreement exceeds the minimum requirements of the Standard Clauses.

_____ Initial

RECEIVED
MAY 20 2016

7.  **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8.  **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.  **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of New York without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.



RECEIVED

MAY 2 0 2016

Initial

Any changes to this agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: _A H F PHARMACY_

NCPDP#: _5816282_

NPI# _1073977633_

By: _(signature)_
(Signature of authorized agent)

_SCOTT CARRUTHERS_

(Print name of authorized agent)

Date: _05 | 17 | 2016_

Caremark IPA, L.L.C.

_(signature)_
(Signature of authorized agent) John M. Lavin
SVP Provider Network Services

By:_____
(Print name of authorized agent)

Date_____

```
******ATTENTION********

PAGES 1-11 MUST BE INITIALED BY
AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED
```

RECEIVED
MAY 20 2016

_KC_
Initial

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount and Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; or (iv) Provider's U&C price less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

RECEIVED

MAY 20 2016

Initial

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# Appendix A

# New York State Department of Health Standard Clauses for Managed Care Provider/IPA Contracts Appendix

**(Revised March 1, 2011)**

Notwithstanding any other provision of this agreement, contract, or amendment (hereinafter "the Agreement" or "this Agreement") the parties agree to be bound by the following clauses which are hereby made a part of the Agreement. Further, if this Agreement is between a Managed Care Organization and an IPA, or between an IPA and an IPA, such clauses must be included in IPA contracts with providers, and providers must agree to such clauses.

## A. Definitions for Purposes of This Appendix

"Managed Care Organization" or " MCO" shall mean the person, natural or corporate, or any groups of such persons, certified under Public Health Law Article 44, who enter into an arrangement, agreement or plan or any combination of arrangements or plans which provide or offer, or which do provide or offer, a comprehensive health services plan.

"Independent Practice Association" or "IPA" shall mean an entity formed for the limited purpose of arranging by contract for the delivery or provision of health services by individuals, entities and facilities licensed or certified to practice medicine and other health professions, and, as appropriate, ancillary medical services and equipment, by which arrangements such health care providers and suppliers will provide their services in accordance with and for such compensation as may be established by a contract between such entity and one or more MCOs. "IPA" may also include, for purposes of this Agreement, a pharmacy or laboratory with the legal authority to contract with other pharmacies or laboratories to arrange for or provide services to enrollees of a New York State MCO.

"Provider" shall mean physicians, dentists, nurses, pharmacists and other health care professionals, pharmacies, hospitals and other entities engaged in the delivery of health care services which are licensed, registered and/or certified as required by applicable federal and state law.

## B. General Terms and Conditions

1.  This Agreement is subject to the approval of the New York State Department of Health and if implemented prior to such approval, the parties agree to incorporate into this Agreement any and all modifications required by the Department of Health for approval or, alternatively, to terminate this Agreement if so directed by the Department of Health, effective sixty (60) days subsequent to notice, subject to Public Health Law §4403(6)(e). This Agreement is the sole agreement between the parties regarding the arrangement established herein.

2.  Any material amendment to this Agreement is subject to the prior approval of the Department of Health, and any such amendment shall be submitted for approval at least thirty (30) days, or ninety (90) days if the amendment adds or materially changes a risk sharing arrangement that is subject to Department of Health review, in advance of anticipated execution. To the extent the MCO provides and arranges for the provision of comprehensive health care services to enrollees served by the Medical Assistance Program, the MCO shall notify and/or submit a copy of such material amendment to DOH or New York City, as may be required by the Medicaid managed care contract between the MCO and DOH (or New York City) and/or the Family Health Plus contract between the MCO and DOH.

3.  Assignment of an agreement between an MCO and (1) an IPA, (2) institutional network provider, or (3) medical group provider that serves five percent or more of the enrolled population in a county, or the assignment of an agreement between an IPA and (1) an institutional provider or (2) medical group provider that serves five percent or more of the enrolled population in a county, requires the prior approval of the Commissioner of Health.



4.    The Provider agrees, or if the Agreement is between the MCO and an IPA or between an IPA and an IPA, the IPA agrees and shall require the IPA's providers to agree, to comply fully and abide by the rules, policies and procedures that the MCO (a) has established or will establish to meet general or specific obligations placed on the MCO by statute, regulation, or DOH or SID guidelines or policies and (b) has provided to the Provider at least thirty (30) days in advance of implementation, including but not limited to:

- quality improvement/management;
- utilization management, including but not limited to precertification procedures, referral process or protocols, and reporting of clinical encounter data;
- member grievances; and
- provider credentialing.

5.    The Provider or, if the Agreement is between the MCO and an IPA, or between an IPA and an IPA, the IPA agrees, and shall require its providers to agree, to not discriminate against an enrollee based on color, race, creed, age, gender, sexual orientation, disability, place of origin, source of payment or type of illness or condition.

6.    If the Provider is a primary care practitioner, the Provider agrees to provide for twenty-four (24) hour coverage and back up coverage when the Provider is unavailable. The Provider may use a twenty-four (24) hour back-up call service provided appropriate personnel receive and respond to calls in a manner consistent with the scope of their practice.

7.    The MCO or IPA which is a party to this Agreement agrees that nothing within this Agreement is intended to, or shall be deemed to, transfer liability for the MCO's or IPA's own acts or omissions, by indemnification or otherwise, to a provider.

8.    Notwithstanding any other provision of this Agreement, the parties shall comply with the provisions of the Managed Care Reform Act of 1996 (Chapter 705 of the Laws of 1996) Chapter 551 of the Laws of 2006, Chapter 451 of the Laws of 2007 and Chapter 237 of the Laws of 2009 with all amendments thereto.

9.    To the extent the MCO enrolls individuals covered by the Medical Assistance and/or Family Health Plus programs, this Agreement incorporates the pertinent MCO obligations under the Medicaid managed care contract between the MCO and DOH (or New York City) and/or the Family Health Plus contract between the MCO and DOH as if set forth fully herein, including:

a.    the MCO will monitor the performance of the Provider or IPA under the Agreement, and will terminate the Agreement and/or impose other sanctions, if the Provider's or IPA's performance does not satisfy standards set forth in the Medicaid managed care and/or Family Health Plus contracts;

b.    the Provider or IPA agrees that the work it performs under the Agreement will conform to the terms of the Medicaid managed care contract between the MCO and DOH (or between the MCO and New York City) and/or the Family Health Plus contract between the MCO and DOH, and that it will take corrective action if the MCO identifies deficiencies or areas of needed improvement in the Provider's or IPA's performance; and

c.    The Provider or IPA agrees to be bound by the confidentiality requirements set forth in the Medicaid managed care contract between the MCO and DOH (or between the MCO and New York City) and/or the Family Health Plus contract between the MCO and DOH.

d.    The MCO and the Provider or IPA agree that a woman's enrollment in the MCO's Medicaid managed care or Family Health Plus product is sufficient to provide services to her newborn, unless the newborn is excluded from enrollment in Medicaid managed care or the MCO does not offer a Medicaid managed care product in the mother's county of fiscal responsibility.

e.    The MCO shall not impose obligations and duties on the Provider or IPA that are inconsistent with the Medicaid managed care and/or Family Health Plus contracts, or that impair any rights accorded to DOH, the local Department of Social Services, or the United States Department of Health and Human Services.

RECEIVED KG
                                                           Initial

MAY 2 0 2016

f.    The Provider or IPA agrees to provide medical records to the MCO for purposes of determining newborn eligibility for Supplemental Security Income where the mother is a member of the MCO and for quality purposes at no cost to the MCO.

g.    The Provider or IPA agrees, pursuant to 31 U.S.C. § 1352 and CFR Part 93, that no Federally appropriated funds have been paid or will be paid to any person by or on behalf of the Provider/IPA for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the award of any Federal loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.  The Provider or IPA agrees to complete and submit the "Certification Regarding Lobbying," Appendix A-1 attached hereto and incorporated herein, if this Agreement exceeds $100,000. If any funds other than Federally appropriated funds have been paid or will be paid to any person for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of a member of Congress, in connection with the award of any Federal Contract, the making of any Federal grant, the making of any Federal loan, the entering of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement, and the Agreement exceeds $100,000 the Provider or IPA shall complete and submit Standard Form-LLL "Disclosure Form to Report Lobbying," in accordance with its instructions.

h.    The Provider agrees to disclose to MCO on an ongoing basis, any managing employee that has been convicted of a misdemeanor or felony related to the person's involvement in any program under Medicare, Medicaid or a Title XX services program (Block grant programs).

i.    The Provider agrees to monitor its employees and staff against the List of Excluded Individuals and Entities (LEIE) and excluded individuals posted by the OMIG on its Website.

j.    The Provider agrees to disclose to MCO complete ownership, control, and relationship information.

k.    Provider agrees to obtain for MCO ownership information from any subcontractor with whom the provider has had a business transaction totaling more than $25,000, during the 12 month period ending on the date of the request made by SDOH, OMIG or DHHS. The information requested shall be provided to MCO within 35 days of such request.

10.    The parties to this Agreement agree to comply with all applicable requirements of the Federal Americans with Disabilities Act.

11.    The Provider agrees, or if the Agreement is between the MCO and an IPA or between an IPA and an IPA, the IPA agrees and shall require the IPA's providers to agree, to comply with all applicable requirements of the Health Insurance Portability and Accountability Act; the HIV confidentiality requirements of Article 27-F of the Public Health Law and Mental Hygiene Law § 33.13.

**C. Payment / Risk Arrangements**

1.    Enrollee Non-liability. Provider agrees that in no event, including, but not limited to, nonpayment by the MCO or IPA, insolvency of the MCO or IPA, or breach of this Agreement, shall Provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against a subscriber, an enrollee or person (other than the MCO or IPA) acting on his/her/their behalf, for services provided pursuant to the subscriber contract or Medicaid Managed Care contract or Family Health Plus contract and this Agreement, for the period covered by the paid enrollee premium. In addition, in the case of Medicaid Managed Care, Provider agrees that, during the time an enrollee is enrolled in the MCO, he/she/it will not bill the New York State Department of Health or the City of New York for Covered Services within the Medicaid Managed Care Benefit Package as set forth in the Agreement between the MCO and the New York State Department of Health.  In the case of Family Health Plus, Provider agrees that, during the time an enrollee is enrolled in the

RECEIVED

Initial

MAY 2 0 2016

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE**

MCO, he/she/it will not bill the New York State Department of Health for Covered Services within the Family Health Plus Benefit Package, as set forth in the Agreement between the MCO and the New York State Department of Health. This provision shall not prohibit the provider, unless the MCO is a managed long term care plan designated as a Program of All-Inclusive Care for the Elderly (PACE), from collecting copayments, coinsurance amounts, or permitted deductibles, as specifically provided in the evidence of coverage, or fees for uncovered services delivered on a fee-for-service basis to a covered person provided that Provider shall have advised the enrollee in writing that the service is uncovered and of the enrollee's liability therefore prior to providing the service. Where the Provider has not been given a list of services covered by the MCO, and/or Provider is uncertain as to whether a service is covered, the Provider shall make reasonable efforts to contact the MCO and obtain a coverage determination prior to advising an enrollee as to coverage and liability for payment and prior to providing the service. This provision shall survive termination of this Agreement for any reason, and shall supersede any oral or written agreement now existing or hereafter entered into between Provider and enrollee or person acting on his or her behalf.

2.    Coordination of Benefits (COB). To the extent otherwise permitted in this Agreement, the Provider may participate in collection of COB on behalf of the MCO, with COB collectibles accruing to the MCO or to the provider. However, with respect to enrollees eligible for medical assistance, or participating in Child Health Plus or Family Health Plus, the Provider shall maintain and make available to the MCO records reflecting COB proceeds collected by the Provider or paid directly to enrollees by third party payers, and amounts thereof, and the MCO shall maintain or have immediate access to records concerning collection of COB proceeds.

3.    If the Provider is a health care professional licensed, registered or certified under Title 8 of the Education Law, the MCO or the IPA must provide notice to the Provider at least ninety (90) days prior to the effective date of any adverse reimbursement arrangement as required by Public Health Law § 4406-c(5-c). Adverse reimbursement change shall mean a proposed change that could reasonably be expected to have a material adverse impact on the aggregate level of payment to a health care professional. This provision does not apply if the reimbursement change is required by law, regulation or applicable regulatory authority; is required as a result of changes in fee schedules, reimbursement methodology or payment policies established by the American Medical Association current procedural terminology (CPT) codes, reporting guidelines and conventions; or such change is expressly provided for under the terms of this Agreement by the inclusion or reference to a specific fee or fee schedule, reimbursement methodology or payment policy indexing scheme.

4.    The parties agree to comply with and incorporate the requirements of Physician Incentive Plan (PIP) Regulations contained in 42 CFR §438.6(h), 42 CFR § 422.208, and 42 CFR § 422.210 into any contracts between the contracting entity (provider, IPA, hospital, etc.) and other persons/entities for the provision of services under this Agreement. No specific payment will be made directly or indirectly under the plan to a physician or physician group as an inducement to reduce or limit medically necessary services furnished to an enrollee.

5.    The parties agree that a claim for home health care services following an inpatient hospital stay cannot be denied on the basis of medical necessity or a lack of prior authorization while a utilization review determination is pending if all necessary information was provided before a member's inpatient hospital discharge, consistent with Public Health Law § 4903.

**D. Records Access**
1.    Pursuant to appropriate consent/authorization by the enrollee, the Provider will make the enrollee's medical records and other personally identifiable information (including encounter data for government-sponsored programs) available to the MCO (and IPA if applicable), for purposes including preauthorization, concurrent review, quality assurance, (including Quality Assurance Reporting Requirements (QARR)), payment processing, and qualification for government programs, including but not limited to newborn eligibility for Supplemental Security Income (SSI) and for MCO/Manager analysis and recovery of overpayments due to fraud and abuse. The Provider will also make enrollee medical records available to the State for management audits, financial audits, program monitoring and evaluation, licensure or certification of facilities or individuals, and as otherwise required by state law. The Provider shall provide copies of such records to DOH at no cost. The Provider (or IPA if applicable) expressly acknowledges that he/she/it shall also provide to the MCO and the State (at no expense to the State), on request, all financial data and reports, and information concerning the appropriateness and quality of services provided, as required by law. These provisions shall survive termination of the contract for any reason.

*FE*
Initial

RECEIVED

MAY 2 0 2016

2.  When such records pertain to Medicaid or Family Health Plus reimbursable services the Provider agrees to disclose the nature and extent of services provided and to furnish records to DOH and/or the United States Department of Health and Human Services, the County Department of Social Services, the Comptroller of the State of New York, the Office of the Medicaid Inspector General, the New York State Attorney General, and the Comptroller General of the United States and their authorized representatives upon request. This provision shall survive the termination of this Agreement regardless of the reason.

3.  The parties agree that medical records shall be retained for a period of six (6) years after the date of service, and in the case of a minor, for three (3) years after majority or six (6) years after the date of service, whichever is later, or for such longer period as specified elsewhere within this Agreement. This provision shall survive the termination of this Agreement regardless of the reason.

4.  The MCO and the Provider agree that the MCO will obtain consent directly from enrollees at the time of enrollment or at the earliest opportunity, or that the Provider will obtain consent from enrollees at the time service is rendered or at the earliest opportunity, for disclosure of medical records to the MCO, to an IPA or to third parties. If the Agreement is between an MCO and an IPA, or between an IPA and an IPA, the IPA agrees to require the providers with which it contracts to agree as provided above. If the Agreement is between an IPA and a provider, the Provider agrees to obtain consent from the enrollee if the enrollee has not previously signed consent for disclosure of medical records.

**E. Termination and Transition**
1.  Termination or non-renewal of an agreement between an MCO and an IPA, institutional network provider, or medical group Provider that serves five percent or more of the enrolled population in a county, or the termination or non-renewal of an agreement between an IPA and an institutional Provider or medical group Provider that serves five percent or more of the enrolled population in a county, requires notice to the Commissioner of Health. Unless otherwise provided by statute or regulation, the effective date of termination shall not be less than 45 days after receipt of notice by either party, provided, however, that termination, by the MCO may be effected on less than 45 days notice provided the MCO demonstrates to DOH's satisfaction prior to termination that circumstances exist which threaten imminent harm to enrollees or which result in Provider being legally unable to deliver the covered services and, therefore, justify or require immediate termination.

2.  If this Agreement is between the MCO and a health care professional, the MCO shall provide to such health care professional a written explanation of the reasons for the proposed contract termination, other than nonrenewal, and an opportunity for a review as required by state law. The MCO shall provide the health care professional 60 days notice of its decision to not renew this Agreement.

3.  If this Agreement is between an MCO and an IPA, and the Agreement does not provide for automatic assignment of the IPA's Provider contracts to the MCO upon termination of the MCO/IPA contract, in the event either party gives notice of termination of the Agreement, the parties agree, and the IPA's providers agree, that the IPA providers shall continue to provide care to the MCO's enrollees pursuant to the terms of this Agreement for 180 days following the effective date of termination, or until such time as the MCO makes other arrangements, whichever first occurs. This provision shall survive termination of this Agreement regardless of the reason for the termination.

4.  Continuation of Treatment. The Provider agrees that in the event of MCO or IPA insolvency or termination of this contract for any reason, the Provider shall continue, until medically appropriate discharge or transfer, or completion of a course of treatment, whichever occurs first, to provide services pursuant to the subscriber contract, Medicaid Managed Care contract, or Family Health Plus contract, to an enrollee confined in an inpatient facility, provided the confinement or course of treatment was commenced during the paid premium period. For purposes of this clause, the term "provider" shall include the IPA and the IPA's contracted providers if this Agreement is between the MCO and an IPA. This provision shall survive termination of this Agreement.

*Kee*

RECEIVED

Initial

MAY 2 0 2016

5.      Notwithstanding any other provision herein, to the extent that the Provider is providing health care services to enrollees under the Medicaid Program and/or Family Health Plus, the MCO or IPA retains the option to immediately terminate the Agreement when the Provider has been terminated or suspended from the Medicaid Program.

6.      In the event of termination of this Agreement, the Provider agrees, and, where applicable, the IPA agrees to require all participating providers of its network to assist in the orderly transfer of enrollees to another provider.

**F. Arbitration**

1.      To the extent that arbitration or alternative dispute resolution is authorized elsewhere in this Agreement, the parties to this Agreement acknowledge that the Commissioner of Health is not bound by arbitration or mediation decisions. Arbitration or mediation shall occur within New York State, and the Commissioner of Health will be given notice of all issues going to arbitration or mediation, and copies of all decisions.

**G. IPA-Specific Provisions**

1.      Any reference to IPA quality assurance (QA) activities within this Agreement is limited to the IPA's analysis of utilization patterns and quality of care on its own behalf and as a service to its contract providers.

RECEIVED        Initial

MAY 20 2016

# Appendix A-1

# CERTIFICATION REGARDING LOBBYING

The undersigned certifies, to the best of his or her knowledge, that:

1. No Federal appropriated funds have been paid or will be paid to any person by or on behalf of the Provider for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of a Member of Congress in connection with the award of any Federal loan, the entering into any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

2. If any funds other than Federal appropriated funds have been paid or will be paid to any person for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress in connection with the award of this Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into any cooperative agreement, or the extension, continuation, renewal, amendment or modification of any Federal contract, grant, loan, or cooperative agreement, and the Agreement exceeds $100,000, the Provider shall complete and submit Standard Form-LLL "Disclosure Form to Reporting Lobby," in accordance with its instructions.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction pursuant to U.S.C. Section 1352. The failure to file the required certification shall subject the violator to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

DATE: 05 | 17 | 2016

TITLE: SR. MANAGER / CHIEF PHARMACY OFFICER

PHARMACY; ORGANIZATION: AIDS HEALTHCARE FOUNDATION

PHARMACY NCPCP / NPI: 1073977633

NAME: (PLEASE PRINT) SCOTT CARRUTHERS

SIGNATURE: _____

\*\*\* Please FAX the completed Appendix A-1 page back to Caremark Network Services at 1-866-316-4336. \*\*\*

KC
Initial

RECEIVED
MAY 2 0 2016

# EXHIBIT A-46

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE**

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

APR 1 8 2017

_KSc_
Initial

8. **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9. **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

APR 1 8 2017

Initial

By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: __AHF PHARMACY__

NCPDP#: __5819163__

NPI # __847722931__

By: _____
(Signature of authorized agent)

__SCOTT CARRUTHERS__
(Print name of authorized agent)

Date: __04|13|2017__

Caremark, L.L.C.

_____
John M. Lavin
SVP Provider Network Services
(Signature of authorized agent)

By: _____

Date_____

CaremarkPCS, L.L.C.

_____
John M. Lavin
SVP Provider Network Services
(Signature of authorized agent)

By: _____

Date_____

```
******ATTENTION********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED
```

APR 18 2017

_____
Initial

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) Provider's submitted Gross Amount Due less the applicable Patient Pay Amount.

APR 1 8 2017

Initial

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark IPA, L.L.C., a New York limited liability company ("Caremark"), and the undersigned provider ("Provider") for Pharmacy Services provided by Provider to Eligible Persons enrolled with a health maintenance organization licensed under New York Public Health Law. The parties agree that the terms of this Agreement are only applicable to the extent Provider provides Pharmacy Services to Eligible Persons enrolled with a health maintenance organization licensed under New York Public Health Law. Accordingly, Caremark and Provider agree as follows:

1.  **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2.  **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3.  **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4.  **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5.  **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with **Schedule A.** Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider. Caremark shall handle with Provider any Provider complaints regarding payment issues and concerns.

6.  **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

    **New York State Department of Health Standard Clauses:** "New York State Department of Health Standard Clauses for Managed Care Provider/IPA Contracts," attached to this Agreement as **Appendix A** are expressly incorporated into this Agreement and are binding upon the parties to this Agreement for Pharmacy Services provided to Eligible Persons enrolled with a health maintenance organization licensed under New York Public Health Law. In the event of any inconsistent or contrary language between the Standard Clauses and any other part of this Agreement, including but not limited to appendices, amendments and exhibits, the parties agree that the provisions of the Standard Clauses shall prevail, except to the extent applicable law requires otherwise and/or to the extent a provision of this Agreement exceeds the minimum requirements of the Standard Clauses.

APR 1 8 2017

Initial

7. **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8. **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9. **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of New York without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

APR 1 8 2017

Initial

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT – DO NOT DISCLOSE**

Any changes to this agreement must be initialed.

By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: _AHF PHARMACY_

NCPDP#: _5819163_

NPI# _1841772936_

By: _(signature)_
(Signature of authorized agent)

_SCOTT CARRUTHERS_

(Print name of authorized agent)

Date: _04|13|2017_

Caremark IPA, L.L.C.     _John M. Lavin (signature)_
                          John M. Lavin
                          SVP Provider Network Services
(Signature of authorized agent)

By:_____
(Print name of authorized agent)

Date_____

```
*******ATTENTION********

PAGES 1-11 MUST BE INITIALED BY
AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED
```

APR 1 8 2017

_RSc_
Initial

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT – DO NOT DISCLOSE**

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount and Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; or (iv) Provider's U&C price less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

APR 1 8 2017

_KC_
Initial

# Appendix A

# New York State Department of Health Standard Clauses for Managed Care Provider/IPA Contracts Appendix

**(Revised March 1, 2011)**

Notwithstanding any other provision of this agreement, contract, or amendment (hereinafter "the Agreement" or "this Agreement") the parties agree to be bound by the following clauses which are hereby made a part of the Agreement. Further, if this Agreement is between a Managed Care Organization and an IPA, or between an IPA and an IPA, such clauses must be included in IPA contracts with providers, and providers must agree to such clauses.

## A. Definitions for Purposes of This Appendix

"Managed Care Organization" or " MCO" shall mean the person, natural or corporate, or any groups of such persons, certified under Public Health Law Article 44, who enter into an arrangement, agreement or plan or any combination of arrangements or plans which provide or offer, or which do provide or offer, a comprehensive health services plan.

"Independent Practice Association" or "IPA" shall mean an entity formed for the limited purpose of arranging by contract for the delivery or provision of health services by individuals, entities and facilities licensed or certified to practice medicine and other health professions, and, as appropriate, ancillary medical services and equipment, by which arrangements such health care providers and suppliers will provide their services in accordance with and for such compensation as may be established by a contract between such entity and one or more MCOs. "IPA" may also include, for purposes of this Agreement, a pharmacy or laboratory with the legal authority to contract with other pharmacies or laboratories to arrange for or provide services to enrollees of a New York State MCO.

"Provider" shall mean physicians, dentists, nurses, pharmacists and other health care professionals, pharmacies, hospitals and other entities engaged in the delivery of health care services which are licensed, registered and/or certified as required by applicable federal and state law.

## B. General Terms and Conditions

1. This Agreement is subject to the approval of the New York State Department of Health and if implemented prior to such approval, the parties agree to incorporate into this Agreement any and all modifications required by the Department of Health for approval or, alternatively, to terminate this Agreement if so directed by the Department of Health, effective sixty (60) days subsequent to notice, subject to Public Health Law §4403(6)(e). This Agreement is the sole agreement between the parties regarding the arrangement established herein.

2. Any material amendment to this Agreement is subject to the prior approval of the Department of Health, and any such amendment shall be submitted for approval at least thirty (30) days, or ninety (90) days if the amendment adds or materially changes a risk sharing arrangement that is subject to Department of Health review, in advance of anticipated execution. To the extent the MCO provides and arranges for the provision of comprehensive health care services to enrollees served by the Medical Assistance Program, the MCO shall notify and/or submit a copy of such material amendment to DOH or New York City, as may be required by the Medicaid managed care contract between the MCO and DOH (or New York City) and/or the Family Health Plus contract between the MCO and DOH.

3. Assignment of an agreement between an MCO and (1) an IPA, (2) institutional network provider, or (3) medical group provider that serves five percent or more of the enrolled population in a county, or the assignment of an agreement between an IPA and (1) an institutional provider or (2) medical group provider that serves five percent or more of the enrolled population in a county, requires the prior approval of the Commissioner of Health.

*APR 1 8 2017*

<u>ILG</u>
Initial

4. The Provider agrees, or if the Agreement is between the MCO and an IPA or between an IPA and an IPA, the IPA agrees and shall require the IPA's providers to agree, to comply fully and abide by the rules, policies and procedures that the MCO (a) has established or will establish to meet general or specific obligations placed on the MCO by statute, regulation, or DOH or SID guidelines or policies and (b) has provided to the Provider at least thirty (30) days in advance of implementation, including but not limited to:

   - quality improvement/management;
   - utilization management, including but not limited to precertification procedures, referral process or protocols, and reporting of clinical encounter data;
   - member grievances; and
   - provider credentialing.

5. The Provider or, if the Agreement is between the MCO and an IPA, or between an IPA and an IPA, the IPA agrees, and shall require its providers to agree, to not discriminate against an enrollee based on color, race, creed, age, gender, sexual orientation, disability, place of origin, source of payment or type of illness or condition.

6. If the Provider is a primary care practitioner, the Provider agrees to provide for twenty-four (24) hour coverage and back up coverage when the Provider is unavailable. The Provider may use a twenty-four (24) hour back-up call service provided appropriate personnel receive and respond to calls in a manner consistent with the scope of their practice.

7. The MCO or IPA which is a party to this Agreement agrees that nothing within this Agreement is intended to, or shall be deemed to, transfer liability for the MCO's or IPA's own acts or omissions, by indemnification or otherwise, to a provider.

8. Notwithstanding any other provision of this Agreement, the parties shall comply with the provisions of the Managed Care Reform Act of 1996 (Chapter 705 of the Laws of 1996) Chapter 551 of the Laws of 2006, Chapter 451 of the Laws of 2007 and Chapter 237 of the Laws of 2009 with all amendments thereto.

9. To the extent the MCO enrolls individuals covered by the Medical Assistance and/or Family Health Plus programs, this Agreement incorporates the pertinent MCO obligations under the Medicaid managed care contract between the MCO and DOH (or New York City) and/or the Family Health Plus contract between the MCO and DOH as if set forth fully herein, including:

   a. the MCO will monitor the performance of the Provider or IPA under the Agreement, and will terminate the Agreement and/or impose other sanctions, if the Provider's or IPA's performance does not satisfy standards set forth in the Medicaid managed care and/or Family Health Plus contracts;

   b. the Provider or IPA agrees that the work it performs under the Agreement will conform to the terms of the Medicaid managed care contract between the MCO and DOH (or between the MCO and New York City) and/or the Family Health Plus contract between the MCO and DOH, and that it will take corrective action if the MCO identifies deficiencies or areas of needed improvement in the Provider's or IPA's performance; and

   c. The Provider or IPA agrees to be bound by the confidentiality requirements set forth in the Medicaid managed care contract between the MCO and DOH (or between the MCO and New York City) and/or the Family Health Plus contract between the MCO and DOH.

   d. The MCO and the Provider or IPA agree that a woman's enrollment in the MCO's Medicaid managed care or Family Health Plus product is sufficient to provide services to her newborn, unless the newborn is excluded from enrollment in Medicaid managed care or the MCO does not offer a Medicaid managed care product in the mother's county of fiscal responsibility.

   e. The MCO shall not impose obligations and duties on the Provider or IPA that are inconsistent with the Medicaid managed care and/or Family Health Plus contracts, or that impair any rights accorded to DOH, the local Department of Social Services, or the United States Department of Health and Human Services.

APR 1 8 2017

_____
Initial

f.  The Provider or IPA agrees to provide medical records to the MCO for purposes of determining newborn eligibility for Supplemental Security Income where the mother is a member of the MCO and for quality purposes at no cost to the MCO.

g.  The Provider or IPA agrees, pursuant to 31 U.S.C. § 1352 and CFR Part 93, that no Federally appropriated funds have been paid or will be paid to any person by or on behalf of the Provider/IPA for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the award of any Federal loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement. The Provider or IPA agrees to complete and submit the "Certification Regarding Lobbying," Appendix A-1 attached hereto and incorporated herein, if this Agreement exceeds $100,000. If any funds other than Federally appropriated funds have been paid or will be paid to any person for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of a member of Congress, in connection with the award of any Federal Contract, the making of any Federal grant, the making of any Federal loan, the entering of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement, and the Agreement exceeds $100,000 the Provider or IPA shall complete and submit Standard Form-LLL "Disclosure Form to Report Lobbying," in accordance with its instructions.

h.  The Provider agrees to disclose to MCO on an ongoing basis, any managing employee that has been convicted of a misdemeanor or felony related to the person's involvement in any program under Medicare, Medicaid or a Title XX services program (Block grant programs).

i.  The Provider agrees to monitor its employees and staff against the List of Excluded Individuals and Entities (LEIE) and excluded individuals posted by the OMIG on its Website.

j.  The Provider agrees to disclose to MCO complete ownership, control, and relationship information.

k.  Provider agrees to obtain for MCO ownership information from any subcontractor with whom the provider has had a business transaction totaling more than $25,000, during the 12 month period ending on the date of the request made by SDOH, OMIG or DHHS. The information requested shall be provided to MCO within 35 days of such request.

10. The parties to this Agreement agree to comply with all applicable requirements of the Federal Americans with Disabilities Act.

11. The Provider agrees, or if the Agreement is between the MCO and an IPA or between an IPA and an IPA, the IPA agrees and shall require the IPA's providers to agree, to comply with all applicable requirements of the Health Insurance Portability and Accountability Act; the HIV confidentiality requirements of Article 27-F of the Public Health Law and Mental Hygiene Law § 33.13.

**C. Payment / Risk Arrangements**

1.  Enrollee Non-liability. Provider agrees that in no event, including, but not limited to, nonpayment by the MCO or IPA, insolvency of the MCO or IPA, or breach of this Agreement, shall Provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against a subscriber, an enrollee or person (other than the MCO or IPA) acting on his/her/their behalf, for services provided pursuant to the subscriber contract or Medicaid Managed Care contract or Family Health Plus contract and this Agreement, for the period covered by the paid enrollee premium. In addition, in the case of Medicaid Managed Care, Provider agrees that, during the time an enrollee is enrolled in the MCO, he/she/it will not bill the New York State Department of Health or the City of New York for Covered Services within the Medicaid Managed Care Benefit Package as set forth in the Agreement between the MCO and the New York State Department of Health. In the case of Family Health Plus, Provider agrees that, during the time an enrollee is enrolled in the

APR 1 8 2017

Initial

## CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
## DO NOT DISCLOSE

MCO, he/she/it will not bill the New York State Department of Health for Covered Services within the Family Health Plus Benefit Package, as set forth in the Agreement between the MCO and the New York State Department of Health. This provision shall not prohibit the provider, unless the MCO is a managed long term care plan designated as a Program of All-Inclusive Care for the Elderly (PACE), from collecting copayments, coinsurance amounts, or permitted deductibles, as specifically provided in the evidence of coverage, or fees for uncovered services delivered on a fee-for-service basis to a covered person provided that Provider shall have advised the enrollee in writing that the service is uncovered and of the enrollee's liability therefore prior to providing the service. Where the Provider has not been given a list of services covered by the MCO, and/or Provider is uncertain as to whether a service is covered, the Provider shall make reasonable efforts to contact the MCO and obtain a coverage determination prior to advising an enrollee as to coverage and liability for payment and prior to providing the service. This provision shall survive termination of this Agreement for any reason, and shall supersede any oral or written agreement now existing or hereafter entered into between Provider and enrollee or person acting on his or her behalf.

2.     Coordination of Benefits (COB). To the extent otherwise permitted in this Agreement, the Provider may participate in collection of COB on behalf of the MCO, with COB collectibles accruing to the MCO or to the provider. However, with respect to enrollees eligible for medical assistance, or participating in Child Health Plus or Family Health Plus, the Provider shall maintain and make available to the MCO records reflecting COB proceeds collected by the Provider or paid directly to enrollees by third party payers, and amounts thereof, and the MCO shall maintain or have immediate access to records concerning collection of COB proceeds.

3.     If the Provider is a health care professional licensed, registered or certified under Title 8 of the Education Law, the MCO or the IPA must provide notice to the Provider at least ninety (90) days prior to the effective date of any adverse reimbursement arrangement as required by Public Health Law § 4406-c(5-c). Adverse reimbursement change shall mean a proposed change that could reasonably be expected to have a material adverse impact on the aggregate level of payment to a health care professional. This provision does not apply if the reimbursement change is required by law, regulation or applicable regulatory authority; is required as a result of changes in fee schedules, reimbursement methodology or payment policies established by the American Medical Association current procedural terminology (CPT) codes, reporting guidelines and conventions; or such change is expressly provided for under the terms of this Agreement by the inclusion or reference to a specific fee or fee schedule, reimbursement methodology or payment policy indexing scheme.

4.     The parties agree to comply with and incorporate the requirements of Physician Incentive Plan (PIP) Regulations contained in 42 CFR §438.6(h), 42 CFR § 422.208, and 42 CFR § 422.210 into any contracts between the contracting entity (provider, IPA, hospital, etc.) and other persons/entities for the provision of services under this Agreement. No specific payment will be made directly or indirectly under the plan to a physician or physician group as an inducement to reduce or limit medically necessary services furnished to an enrollee.

5.     The parties agree that a claim for home health care services following an inpatient hospital stay cannot be denied on the basis of medical necessity or a lack of prior authorization while a utilization review determination is pending if all necessary information was provided before a member's inpatient hospital discharge, consistent with Public Health Law § 4903.

**D. Records Access**
1.     Pursuant to appropriate consent/authorization by the enrollee, the Provider will make the enrollee's medical records and other personally identifiable information (including encounter data for government-sponsored programs) available to the MCO (and IPA if applicable), for purposes including preauthorization, concurrent review, quality assurance, (including Quality Assurance Reporting Requirements (QARR)), payment processing, and qualification for government programs, including but not limited to newborn eligibility for Supplemental Security Income (SSI) and for MCO/Manager analysis and recovery of overpayments due to fraud and abuse. The Provider will also make enrollee medical records available to the State for management audits, financial audits, program monitoring and evaluation, licensure or certification of facilities or individuals, and as otherwise required by state law. The Provider shall provide copies of such records to DOH at no cost. The Provider (or IPA if applicable) expressly acknowledges that he/she/it shall also provide to the MCO and the State (at no expense to the State), on request, all financial data and reports, and information concerning the appropriateness and quality of services provided, as required by law. These provisions shall survive termination of the contract for any reason.

APR 1 8 2017

Initial

2.    When such records pertain to Medicaid or Family Health Plus reimbursable services the Provider agrees to disclose the nature and extent of services provided and to furnish records to DOH and/or the United States Department of Health and Human Services, the County Department of Social Services, the Comptroller of the State of New York, the Office of the Medicaid Inspector General, the New York State Attorney General, and the Comptroller General of the United States and their authorized representatives upon request. This provision shall survive the termination of this Agreement regardless of the reason.

3.    The parties agree that medical records shall be retained for a period of six (6) years after the date of service, and in the case of a minor, for three (3) years after majority or six (6) years after the date of service, whichever is later, or for such longer period as specified elsewhere within this Agreement. This provision shall survive the termination of this Agreement regardless of the reason.

4.    The MCO and the Provider agree that the MCO will obtain consent directly from enrollees at the time of enrollment or at the earliest opportunity, or that the Provider will obtain consent from enrollees at the time service is rendered or at the earliest opportunity, for disclosure of medical records to the MCO, to an IPA or to third parties. If the Agreement is between an MCO and an IPA, or between an IPA and an IPA, the IPA agrees to require the providers with which it contracts to agree as provided above. If the Agreement is between an IPA and a provider, the Provider agrees to obtain consent from the enrollee if the enrollee has not previously signed consent for disclosure of medical records.

**E. Termination and Transition**
1.    Termination or non-renewal of an agreement between an MCO and an IPA, institutional network provider, or medical group Provider that serves five percent or more of the enrolled population in a county, or the termination or non-renewal of an agreement between an IPA and an institutional Provider or medical group Provider that serves five percent or more of the enrolled population in a county, requires notice to the Commissioner of Health. Unless otherwise provided by statute or regulation, the effective date of termination shall not be less than 45 days after receipt of notice by either party, provided, however, that termination, by the MCO may be effected on less than 45 days notice provided the MCO demonstrates to DOH's satisfaction prior to termination that circumstances exist which threaten imminent harm to enrollees or which result in Provider being legally unable to deliver the covered services and, therefore, justify or require immediate termination.

2.    If this Agreement is between the MCO and a health care professional, the MCO shall provide to such health care professional a written explanation of the reasons for the proposed contract termination, other than nonrenewal, and an opportunity for a review as required by state law. The MCO shall provide the health care professional 60 days notice of its decision to not renew this Agreement.

3.    If this Agreement is between an MCO and an IPA, and the Agreement does not provide for automatic assignment of the IPA's Provider contracts to the MCO upon termination of the MCO/IPA contract, in the event either party gives notice of termination of the Agreement, the parties agree, and the IPA's providers agree, that the IPA providers shall continue to provide care to the MCO's enrollees pursuant to the terms of this Agreement for 180 days following the effective date of termination, or until such time as the MCO makes other arrangements, whichever first occurs. This provision shall survive termination of this Agreement regardless of the reason for the termination.

4.    Continuation of Treatment. The Provider agrees that in the event of MCO or IPA insolvency or termination of this contract for any reason, the Provider shall continue, until medically appropriate discharge or transfer, or completion of a course of treatment, whichever occurs first, to provide services pursuant to the subscriber contract, Medicaid Managed Care contract, or Family Health Plus contract, to an enrollee confined in an inpatient facility, provided the confinement or course of treatment was commenced during the paid premium period. For purposes of this clause, the term "provider" shall include the IPA and the IPA's contracted providers if this Agreement is between the MCO and an IPA. This provision shall survive termination of this Agreement.

APR 18 2017

_____
Initial

5.  Notwithstanding any other provision herein, to the extent that the Provider is providing health care services to enrollees under the Medicaid Program and/or Family Health Plus, the MCO or IPA retains the option to immediately terminate the Agreement when the Provider has been terminated or suspended from the Medicaid Program.

6.  In the event of termination of this Agreement, the Provider agrees, and, where applicable, the IPA agrees to require all participating providers of its network to assist in the orderly transfer of enrollees to another provider.

### F. Arbitration

1.  To the extent that arbitration or alternative dispute resolution is authorized elsewhere in this Agreement, the parties to this Agreement acknowledge that the Commissioner of Health is not bound by arbitration or mediation decisions. Arbitration or mediation shall occur within New York State, and the Commissioner of Health will be given notice of all issues going to arbitration or mediation, and copies of all decisions.

### G. IPA-Specific Provisions

1.  Any reference to IPA quality assurance (QA) activities within this Agreement is limited to the IPA's analysis of utilization patterns and quality of care on its own behalf and as a service to its contract providers.

APR 1 8 2017

Initial

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# Appendix A-1

# CERTIFICATION REGARDING LOBBYING

The undersigned certifies, to the best of his or her knowledge, that:

1.  No Federal appropriated funds have been paid or will be paid to any person by or on behalf of the Provider for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of a Member of Congress in connection with the award of any Federal loan, the entering into any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

2.  If any funds other than Federal appropriated funds have been paid or will be paid to any person for the purpose of influencing or attempting to influence an officer or employee of any agency, a Member of Congress in connection with the award of this Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into any cooperative agreement, or the extension, continuation, renewal, amendment or modification of any Federal contract, grant, loan, or cooperative agreement, and the Agreement exceeds $100,000, the Provider shall complete and submit Standard Form-LLL "Disclosure Form to Reporting Lobby," in accordance with its instructions.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction pursuant to U.S.C. Section 1352. The failure to file the required certification shall subject the violator to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

DATE: 04\13\2017

TITLE: SR. MANAGER / CHIEF PHARMACY OFFICER

PHARMACY; ORGANIZATION: AIDS HEALTHCARE FOUNDATION

PHARMACY NCPCP / NPI: 5819163 / 1841722931

NAME: (PLEASE PRINT) SCOTT CARRUTHERS

SIGNATURE:

APR 1 8 2017

*** Please FAX the completed Appendix A-1 page back to Caremark Network Services at 1-866-316-4336. ***

Initial

# EXHIBIT A-47

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider").   Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law.  Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law.  Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents.  Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person.  With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark.  Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark.  Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein.  Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A.  Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.  Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

RECEIVED

MAY 0 1 2013

Initial

8.  **Limitation on Liability.** In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.  **Term.** The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. **Entire Agreement.** This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. **Waiver.** Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. **Lawful Interpretation and Jurisdiction.** Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. **Headings.** The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

RECEIVED

MAY 0 1 2013

Initial

## CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT – DO NOT DISCLOSE

Any changes to this Agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: AIDS Healthcare Foundation
dba AHF Pharmacy – Ft. Worth

NCPDP#: 5907778

NPI # 1942546395

By: _____
(Signature of authorized agent)

Lyle Honig
(Print name of authorized agent)

Date: 4-21-13

Caremark, L.L.C.

John M. Lavin
SVP Provider Network Services
(Signature of authorized agent)

By: _____

Date_____

CaremarkPCS, L.L.C.
John M. Lavin
SVP Provider Network Services

(Signature of authorized agent)

By: _____

Date_____

---

****** ATTENTION ********

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED

---

RECEIVED

MAY 0 1 2013

Initial

Caremark Provider Agreement
1-1-2013

3

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

RECEIVED

MAY 0 1 2013

Initial

# EXHIBIT A-48

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. **Definitions.** Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. **Credentialing.** Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. **Provider Services and Standards.** Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. **Eligible Person Identification and Cost Share.** Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. **Network Participation and Payment.** Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. **Compliance with Law.** Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. **Indemnification.** Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

RECEIVED

DEC 1 8 2014

Initial

**CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE**

8.    **Limitation on Liability.**  In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9.    **Term.**  The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10.   **Assignment.**  Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company.  Any permitted assignee shall assume all obligations of its assignor under this Agreement.  This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11.   **Entire Agreement.**  This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement".  Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement.  In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12.   **Waiver.**  Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default.  No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13.   **Lawful Interpretation and Jurisdiction.**  Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law.  Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect.  Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14.   **Headings.**  The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

RECEIVED

DEC 1 8 2014

*KC*
Initial

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

Any changes to this Agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: _AHF Pharmacy_

NCPDP#: _591 2349_

NPI # _1659789279_

By: _____
(Signature of authorized agent)

_K. Scott Carruthers_
(Print name of authorized agent)

Date: _12/16/14_

---

****** ATTENTION ********

PAGES **1, 2,** AND **4** MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED

---

Caremark, L.L.C.

_____
(Signature of authorized agent)

By: _John M. Lavin_
    SVP Provider Network Services

Date _____

Caremark PCS, L.L.C.

(Signature of authorized agent)

By: _John M. Lavin_
    SVP Provider Network Services

Date _____

RECEIVED

DEC 1 8 2014

_KSc_
Initial

Caremark Provider Agreement
1-1-2013

3

> CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
> DO NOT DISCLOSE

Any changes to this Agreement must be initialed.
By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual.

Pharmacy Name: _AHF Pharmacy_

NCPDP#: _5912349_

NPI # _0650989279_

By: _____
(Signature of authorized agent)

_K. Scott Carruthers_
(Print name of authorized agent)

Date: _12/16/14_

```
******ATTENTION******

PAGES 1, 2, AND 4 MUST BE INITIALED
BY AUTHORIZED AGENT BEFORE
CONTRACT WILL BE ACCEPTED
```

Caremark L.L.C.

_John M. Lavin_
SVP Provider Network Services

(Signature of authorized agent)

By: _____
SVP Provider Network Services

Date: _____

Caremark PCS, L.L.C.

_John M. Lavin_
SVP Provider Network Services

(Signature of authorized agent)

By: _____
SVP Provider Network Services

Date: _____

```
RECEIVED
AUG 2 6 2016
BY: .......................
```

_pcs_
Initial

Caremark Provider Agreement
1-1-2013

3

CONFIDENTIAL AND PROPRIETARY – FOIA EXEMPT –
DO NOT DISCLOSE

# SCHEDULE A
# NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.

RECEIVED

DEC 1 8 2014

_____
Initial

# EXHIBIT A-49



# Base Agreement

CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider").   Caremark and Provider agree as follows:

1. Definitions.  Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. Credentialing.  Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law.  Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. Provider Services and Standards.  Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law.  Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents.  Caremark may inspect all records of Provider relating to the Agreement.

4. Eligible Person Identification and Cost Share.  Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person.  With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark.  Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark.  Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. Network Participation and Payment.  Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein.  Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A.  Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. Compliance with Law.  Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. Indemnification. Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8. Limitation on Liability. In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9. Term. The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. Assignment. Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. Entire Agreement. This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. Waiver. Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. Lawful Interpretation and Jurisdiction. Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. Headings. The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

SCHEDULE A
NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) Provider's submitted Gross Amount Due less the applicable Patient Pay Amount.

(X) By selecting this option, Provider, through its duly authorized representative, executes this Provider Agreement (which includes the Provider Manual) with CVS/caremark, and acknowledges receipt of the Provider Manual as available through this link.

( ) I decline to execute the Provider Agreement. If you select this option, you understand that you may not use the Pharmacy Portal to continue the enrollment process.

Signature:

    AHFMedicalCity/Scott Carruthers
    04/09/2018 10:12:07 AM
    AHF Pharmacy
    5923811/1811404114
    7777 Forest Ln Ste BA80
    Dallas, TX 75230

# EXHIBIT A-50



# Base Agreement

CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider").    Caremark and Provider agree as follows:

1. Definitions.  Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. Credentialing.  Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law.  Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. Provider Services and Standards.  Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law.  Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents.  Caremark may inspect all records of Provider relating to the Agreement.

4. Eligible Person Identification and Cost Share.  Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person.  With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark.  Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark.  Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. Network Participation and Payment.  Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein.  Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A.  Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. Compliance with Law.  Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. Indemnification. Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8. Limitation on Liability. In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9. Term. The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. Assignment. Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. Entire Agreement. This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. Waiver. Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. Lawful Interpretation and Jurisdiction. Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. Headings. The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

SCHEDULE A
NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A". Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount. The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form. If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim. AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) Provider's submitted Gross Amount Due less the applicable Patient Pay Amount.

(X) By selecting this option, Provider, through its duly authorized representative, executes this Provider Agreement (which includes the Provider Manual) with CVS/caremark, and acknowledges receipt of the Provider Manual as available through this link.

( ) I decline to execute the Provider Agreement. If you select this option, you understand that you may not use the Pharmacy Portal to continue the enrollment process.

Signature:
        AHFPhiladelphia1/Scott Carruthers
        07/12/2018 09:03:32 AM
        AHF Pharmacy
        6006301/1912412941
        1211 Chestnut St Ste 405
        Philadelphia, PA 19107

# EXHIBIT A-51



# Base Agreement

CAREMARK PROVIDER AGREEMENT

This Provider Agreement (the "Provider Agreement" or "Agreement") is entered into between Caremark, L.L.C., a California limited liability company and CaremarkPCS, L.L.C., a Delaware limited liability company (collectively "Caremark"), and the undersigned provider ("Provider"). Caremark and Provider agree as follows:

1. Definitions. Unless otherwise defined herein, capitalized terms used in the Agreement shall have the meanings set forth in the Glossary of Terms contained in the Provider Manual.

2. Credentialing. Provider represents, warrants, and agrees that as of the date of execution of the Agreement, Provider is and shall maintain in good standing, all federal, state and local licenses and certifications as required by Law. Provider will provide Caremark with the information required from time to time regarding Provider's credentials, including, but not limited to Provider's licensure, accreditation, certification, and insurance, and will comply with and maintain Caremark credentialing standards and requirements.

3. Provider Services and Standards. Unless Provider's professional judgment dictates otherwise, Provider will render to all Eligible Persons the Pharmacy Services to which the Eligible Person is entitled in accordance with the Agreement, the prescriber's directions, the applicable Plan, and applicable Law. Provider will submit all Claims for such Pharmacy Services electronically to Caremark in accordance with the Caremark Documents. Caremark may inspect all records of Provider relating to the Agreement.

4. Eligible Person Identification and Cost Share. Provider will require each person requesting Pharmacy Services to verify that he or she is an Eligible Person. With respect to each Covered Item dispensed to an Eligible Person, Provider will collect from the Eligible Person the applicable Patient Pay Amount communicated to Provider through the Caremark claims adjudication system or other method established by Caremark. Provider will not waive, discount, reduce, or increase the Patient Pay Amount indicated in the Caremark claims adjudication system unless otherwise authorized in writing by Caremark. Except for the collection of the applicable Patient Pay Amount, in no event will Provider seek compensation in any manner from an Eligible Person for Pharmacy Services with respect to a Covered Item.

5. Network Participation and Payment. Provider agrees to participate in the networks identified on the attached Schedule A according to the terms set forth therein. Caremark will pay Provider for Covered Items dispensed to Eligible Persons pursuant to the Agreement in accordance with Schedule A. Any overpayments made to Provider by Caremark may be deducted from amounts otherwise payable to Provider.

6. Compliance with Law. Provider will comply with all applicable Laws, including but not limited to those Laws referenced in the Federal and State Laws and Regulations section (and attached Addendums thereto) set forth in the Provider Manual.

7. Indemnification. Provider acknowledges that Provider bears sole responsibility for any liability arising (i) from any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider. Provider will indemnify and hold harmless Caremark and Plan Sponsors and their respective shareholders, directors, employees, agents, and representatives from and against any and all liabilities, losses, settlements, claims, injuries, damages, expenses, demands, or judgments of any kind (including reasonable expenses and attorneys' fees) that may result or arise out of (i) any actual or alleged malpractice, negligence, misconduct, or breach by Provider in the performance or omission of any act or responsibility assumed by Provider or (ii) in the provision of Pharmacy Services or the sale, compounding, dispensing, manufacturing, or use of a drug or device dispensed by Provider.

8. Limitation on Liability. In no event will Caremark be liable to Provider for indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business.

9. Term. The Agreement will begin on the date of acceptance by Caremark and will remain in effect until terminated in accordance with the Provider Manual.

10. Assignment. Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that Caremark may, without consent, assign this Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assignees.

11. Entire Agreement. This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement". Any prior agreements, promises, negotiations, or representations concerning the subject matter covered by the Agreement are terminated and of no force and effect. Provider's non-compliance with any of the provisions of this Agreement, including the Provider Manual and other Caremark Documents will be a breach of the Provider Agreement. In the event there is a conflict between any of the provisions in this Provider Agreement, the Provider Manual, other Caremark Documents and a provision in an applicable State specific addendum attached to the Federal and State Laws and Regulations section of the Provider Manual, the terms of the applicable State specific addendum shall govern.

12. Waiver. Failure to exercise any of the rights granted under the Agreement for any one default will not be a waiver of any other or subsequent default. No act or delay shall be deemed to impair any of the rights, remedies, or powers granted in the Agreement.

13. Lawful Interpretation and Jurisdiction. Whenever possible, each provision of the Agreement shall be interpreted so as to be effective and valid under applicable Law. Should any provision of this Agreement be held unenforceable or invalid under applicable Law, the remaining provisions shall remain in full force and effect. Unless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions.

14. Headings.  The headings of Sections contained in the Agreement are for convenience only and do not affect in any way the meaning or interpretations of the Agreement.

SCHEDULE A
NETWORK PARTICIPATION AND PAYMENT

This Schedule A is comprised of this Schedule A and all prior and subsequent network addendums and network enrollment forms, all of which are incorporated herein by this reference and referred to collectively as "Schedule A".  Provider agrees that it will participate in all Caremark and Plan Sponsor pharmacy networks in which: (1) Provider participates in as of the date of this Agreement; (2) Provider and Caremark have executed a network addendum or network enrollment form as of the date of this Agreement; (3) Provider and Caremark subsequently execute a network addendum or network enrollment form; and (4) Provider agrees to participate as evidenced by its provision of Pharmacy Services to an Eligible Person of a Plan Sponsor utilizing such pharmacy network(s).

Unless otherwise set forth in a network addendum or network enrollment form signed by both parties, claims submitted for a Plan Sponsor participating in an Caremark or Plan Sponsor network will be reimbursed at the lower of: (i) AWP less the applicable AWP Discount plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) gross amount due less the applicable Patient Pay Amount.  The applicable AWP Discount and Dispensing Fee will be set forth in the applicable network addendum or network enrollment form.  If Provider has not executed and delivered to Caremark a network addendum or network enrollment form, the applicable AWP Discount and Dispensing Fee will be the reimbursement rate as indicated in the adjudication claims system as to such claim.  AWP Discounts and Dispensing Fees may be amended in accordance with the terms of the Agreement.

Notwithstanding any other provision in the Provider Agreement, claims (excluding compounded medications) submitted for a Plan Sponsor participating in a Caremark or Plan Sponsor network may be reimbursed at the lower of: (i) Price Type plus an applicable percentage of the Price Type, or minus the applicable percentage of the Price Type, plus the applicable Dispensing Fee less the applicable Patient Pay Amount (or if applicable Price Type is unavailable for a given drug, Caremark will pay Provider based upon AWP minus the applicable AWP Discount plus the applicable Dispensing Fee minus the applicable Patient Pay Amount); (ii) MAC plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iii) ingredient cost submitted by Provider plus the applicable Dispensing Fee less the applicable Patient Pay Amount; (iv) Provider's U&C price less the applicable Patient Pay Amount; or (v) Provider's submitted Gross Amount Due less the applicable Patient Pay Amount.


(X) By selecting this option, Provider, through its duly authorized representative, executes this Provider Agreement (which includes the Provider Manual) with CVS/caremark, and acknowledges receipt of the Provider Manual as available through this link.

( ) I decline to execute the Provider Agreement. If you select this option, you understand that you may not use the Pharmacy Portal to continue the enrollment process.

Signature:

ahfsanjuan/Scott Carruthers
03/18/2019 12:02:06 PM
AIDS Healthcare Foundation
4029953/1235634007
SR 848 km 1'0 Saint Just
Trujillo Alto, PR 00978